Floyd G. Short *(appearance pro hac vice)*
Katherine M. Peaslee (CA Bar #310298)
**SUSMAN GODFREY L.L.P.**
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Telephone: (206) 516-3880
Fax: (206) 516-3883
fshort@susmangodfrey.com
kpeaslee@susmangodfrey.com

Catriona Lavery (CA Bar #310546)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Fax: (310) 789-3150
clavery@susmangodfrey.com

*Attorneys for Defendants Amy's Kitchen, Inc.*
*Employee Benefit Health Plan and Amy's Kitchen, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVITA, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AMY'S KITCHEN, INC. EMPLOYEE BENEFIT HEALTH PLAN, et al.,<br><br>Defendants. | Case No. 3:18-cv-06975-JST<br><br>**MOTION TO DISMISS**<br><br>Hearing Date: March 28, 2019<br>Time: 2:00 p.m.<br>Place: Courtroom 9, 19th Floor, United States District Court, 450 Golden Gate Ave., San Francisco, CA<br>Complaint Filed: November 16, 2018 |

# <u>TABLE OF CONTENTS</u>

MOTION TO DISMISS COMPLAINT AND NOTICE OF MOTION ........................................... 1

STATEMENT OF ISSUES TO BE DECIDED ...................................................................... 1

SUPPORTING POINTS AND AUTHORITY ........................................................................ 2

I.      INTRODUCTION ................................................................................................... 2

II.     BACKGROUND ...................................................................................................... 2

        A.      The Parties. ................................................................................................ 2

        B.      ERISA, Amy's Plan, and the Plan's Dialysis Program. ............................ 3

        C.      DaVita Receives Reimbursements Pursuant to the Amended Plan. .......... 6

III.    APPLICABLE LEGAL STANDARDS ..................................................................... 6

IV.     ARGUMENT .......................................................................................................... 7

        A.      DaVita Lacks Standing to Bring Its Claims under ERISA and Its Claim
                under the MSPA as an Assignee of Patient 1 .............................................. 8

                (1)     DaVita Lacks Standing to Bring Its ERISA Claims in Its Own Right
                        (Counts Two, Three, and Four). .................................................... 8

                (2)     DaVita Lacks Article III Standing to Pursue Claims for Equitable
                        Relief Because It Lacks an Assignment of Those Rights (Counts
                        Two and Four). ............................................................................. 8

                (3)     DaVita Lacks Article III Standing to Bring Its Claim for Benefits
                        under ERISA Because Patient 1 Has Suffered No Injury-in-Fact
                        (Count Three). ............................................................................. 10

                (4)     DaVita Lacks Article III Standing to Bring a Claim under the MSPA
                        as an Assignee (Count One). ....................................................... 11

        B.      DaVita Fails to State Any Federal Claim Upon Which Relief Can Be
                Granted. .................................................................................................. 12

                (1)     DaVita Has Not Alleged Any Expenses Actually Borne by Medicare
                        as Required to State a Claim Under the MSPA (Count One). .......... 12

                (2)     DaVita Has Not Alleged Any Discrimination Between Plan
                        Members as Required to State a Claim Under the MSPA or for
                        "Illegal Plan Terms" Under ERISA (Counts One and Two). ........ 14

                (3)     DaVita Fails to State a Claim For Benefits Under ERISA (Count
                        Three). ...................................................................................... 15

                (4)     DaVita Fails to State a Claim for Breach of Fiduciary Duty (Count
                        Four). ........................................................................................ 17

(5) DaVita Further Fails to Plead Facts Sufficient to Support the Specific Equitable Relief Sought of Surcharge, Reformation, and Estoppel (Claims Two and Four). ................................................. 19

C. All of DaVita's State Law Claims Must Be Dismissed For Lack of Subject Matter Jurisdiction and Because They Are Preempted by ERISA and Insufficiently Pleaded Regardless (Count Five)...................................................... 21

(1) DaVita's state law claims must be dismissed for lack of subject matter jurisdiction. .................................................. 21

(2) DaVita's state law claims are preempted by ERISA................................. 22

(3) DaVita has not stated a claim for negligent misrepresentation. ................. 23

(4) DaVita has not stated a claim for promissory estoppel. ............................ 24

(5) DaVita has not stated a claim for quantum meruit. .................................... 24

D. DaVita's Complaint Should be Dismissed with Prejudice...................................... 25

V. CONCLUSION ................................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Acosta v. Brain*,
910 F.3d 502 (9th Cir. 2018)................................................................................4

*Acosta v. Pac. Enterprises*,
950 F.2d 611 (9th Cir. 1991), *as amended on reh'g* (Jan. 23, 1992) ........................18

*Aetna Health, Inc., v. Davila*,
542 U.S. 200 (2004) ................................................................................4

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
99 F. Supp. 3d 1110 (C.D. Cal. 2015)................................................................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................6, 7

*B.R. v. Beacon Health Options*,
No. 16-CV-04576-MEJ, 2017 WL 5665667 (N.D. Cal. Nov. 27, 2017)...............................16

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007)................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570, (2007) ................................................................6

*Berg v. First State Ins. Co.*,
915 F.2d 460 (9th Cir. 1990)................................................................21

*Bio-Medical App. of Ga. v. City of Dalton, Ga.*,
685 F. Supp. 2d 1321 (N.D. Ga. 2009) ................................................................12

*Bio-Medical Applications of Tennessee v. Central States Southeast & Southwest
Areas Health & Welfare Fund*,
656 F.3d 277 (6th Cir. 2011)................................................................12

*Biotech. Value Fund, L.P. v. Celera Corp.*,
12 F. Supp. 3d 1194 (N.D. Cal. 2013) ................................................................21

*Boggs v. Boggs*,
520 U.S. 833, 117 S. Ct. 1754 (1997) ................................................................4

*Bryant v. Am. Seafoods Co.*,
348 Fed. App'x. 256 (9th Cir. 2009)................................................................11

*Bins v. Exxon Co. U.S.A.*,
    220 F.3d 1042 (9th Cir. 2000) ...........................................................................3

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*,
    590 F.3d 806 (9th Cir. 2010) .............................................................................7

*Cedars Sinai Med. Ctr. v. Mid-W. Nat. Life Ins. Co.*,
    118 F. Supp. 2d 1002 (C.D. Cal. 2000) ..........................................................25

*In re Century Aluminum Co. Sec. Litig.*,
    729 F.3d 1104 (9th Cir. 2013) ...........................................................................7

*CIGNA Corp. v. Amara*,
    563 U.S. 421, 131 S. Ct. 1866, 179 L. Ed. 2d 843 (2011) ..............................20

*Conkright v. Frommert*,
    559 U.S. 506 (2010) .....................................................................................3, 16

*Curtiss-Wright Corp. v. Schoonejongen*,
    514 U.S. 73 (1995) ...................................................................................3, 4, 17

*DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*,
    852 F.3d 868 (9th Cir. 2017) .........................................................................8, 10

*Delino v. Platinum Cmty. Bank*,
    628 F. Supp. 2d 1226 (S.D. Cal. 2009) ...........................................................23

*Doe One v. CVS Pharmacy, Inc.*,
    No. 18-CV-01031-EMC, 2018 WL 6574191 (N.D. Cal. Dec. 12, 2018) ..................16

*Eden Surgical Center v. B. Braun Medical, Inc.*,
    420 F. App'x 696 (9th Cir. 2011) ....................................................................9, 10

*Egelhoff v. Egelhoff ex rel. Breiner*,
    532 U.S. 141 (2001) ..............................................................................................3

*Ellenburg v. Brockway, Inc.*,
    763 F.2d 1091 (9th Cir. 1985) ...........................................................................22

*Fossen v. Blue Cross & Blue Shield of Mont., Inc.*,
    660 F.3d 1102 (9th Cir. 2011) ...........................................................................22

*Frazer v. CNA Ins. Co.*,
    374 F. Supp. 2d 1067 (N.D. Ala. 2005) ...............................................11, 12, 13

*Gabriel v. Alaska Elec. Pension Fund*,
    773 F.3d 945 (9th Cir. 2014) ................................................................20, 21, 23

*Glover v. Liggett Grp., Inc.*,
    459 F.3d 1304 (11th Cir. 2006) .........................................................................13

*Glover v. Philip Morris USA*,
    380 F. Supp. 2d 1279 (M.D. Fla. 2005) ...................................................................13

*Hansen v. Jeffco Painting & Coating, Inc.*,
    No. C 93-0082 BAC, 1993 WL 204260 (N.D. Cal. June 8, 1993) ...........................17

*Hapeville Dialysis Ctr., LLC v. City of Atlanta, Ga.*,
    2013 WL 831635 (N.D. Ga. 2013)...................................................................12, 15

*Kwan v. SanMedica Int'l*,
    854 F.3d 1088 (9th Cir. 2017)...............................................................................7

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001)...............................................................................4, 9

*Leggette, et al. v. B.V. Hedrick Gravel & Sand Co.*,
    Case No. 3:04–CV–00530–CH (W.D.N.C. May 24, 2006).....................................12

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996) .............................................................................................4

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .............................................................................................6

*Manning v. Utilities Mut. Ins. Co.*,
    254 F.3d 387, 394 (2d Cir. 2001) ........................................................................13

*McIntyre v. Carpenters Health & Sec. Tr. of W. Wash.*,
    No. C05-5724FDB, 2006 WL 118249 (W.D. Wash. Jan. 13, 2006) .......................17

*Misic v. Bldg. Serv. Employees Health & Welfare Tr.*,
    789 F.2d 1374 (9th Cir. 1986)..............................................................................10

*Nat'l Renal Alliance, LLC v. Blue Cross & Blue Shield of Ga., Inc.*,
    598 F. Supp. 2d 1344 (N.D. Ga. 2009) .............................................................13, 15

*Owen v. Regence Blue Cross Blue Shield of Utah*,
    388 F. Supp. 2d 1318 (D. Utah 2005) ...................................................................11

*Pac. Bay Recovery, Inc. v. Cal. Phys.' Servs., Inc.*, 12 Cal. App. 5th 200, 215 (Ct.
    App. 2017)........................................................................................................25

*PacifiCare of Ariz., Inc. v. Surgical Assistant Assocs., L.L.C.*,
    No. CV06-00132-PHX-NVW, 2007 WL 708833 (D. Ariz. Mar. 2, 2007) .............11

*Parra v. PacifiCare of Ariz., Inc.*,
    715 F.3d 1146 (9th Cir. 2013).............................................................................12

*Prime Healthcare Servs., Inc. v. Humana Ins. Co.*,
    230 F. Supp. 3d 1194 (C.D. Cal. 2017).................................................................24

*Reddy v. Litton Indus., Inc.*,
    912 F.2d 291 (9th Cir. 1990)...................................................................................25

*Resolute Forest Prod., Inc. v. Greenpeace Int'l*,
    302 F. Supp. 3d 1005 (N.D. Cal. 2017) .................................................................23

*S. City Motors, Inc. v. Auto. Indus. Pension Tr. Fund*,
    No. 15-CV-01068-JST, 2015 WL 4638251 (N.D. Cal. Aug. 4, 2015) ....................24

*Shaw v. Delta Air Lines, Inc.*,
    463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) ...........................................22

*Skinner v. Northrop Grumman Retirement Plan B*,
    673 F.3d 1162 (9th Cir. 2012) ...............................................................................20

*Spinedex Phys. Therapy USA Inc. v. United Healthcare of Ariz., Inc.*,
    770 F.3d 1282 (9th Cir. 2014)....................................................................4, 8, 9, 10

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016), *as revised* (May 24, 2016) ..............................................11

*Stalley v. Catholic Health Initiatives*,
    458 F. Supp. 2d 958 (E.D. Ark. 2006), *aff'd* 509 F.3d 517 (8th Cir. 2007).............13

*Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co.*,
    520 F. Supp. 2d 1184 (C.D. Cal. 2007) .................................................................23

*Tingey v. Pixley-Richards W., Inc.*,
    953 F.2d 1124 (9th Cir. 1992) ...............................................................................22

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715 (1966) ...............................................................................................21

*United States v. Georgia-Pac. Co.*,
    421 F.2d 92 (9th Cir. 1970) ....................................................................................20

*Verducci v. Teamsters Benefit Tr.*,
    No. 12-CV-03189-JST, 2013 WL 6000574 (N.D. Cal. Nov. 12, 2013) ...................16

*Vyas v. Vyas*,
    No. CV1502152RSWLDFMX, 2016 WL 7496749 (C.D. Cal. Nov. 3, 2016) ............4

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
    903 F. Supp. 2d 880 (C.D. Cal. 2012)....................................................8, 9, 10, 17

*Wise v. Verizon Commc'ns, Inc.*,
    600 F.3d 1180 (9th Cir. 2010).................................................................................22

*Woods v. Empire Health Choice, Inc.*,
    574 F.3d 92 (2d Cir. 2009)......................................................................................11

*Woods v. Empire Health Choice, Inc.*,
    No. 05–CV–0577 (DLI)(LB), 2007 WL 2406876 (E.D.N.Y. Aug. 20, 2007) .........................13

**California Cases**

*Daniels v. Select Portfolio Servicing, Inc.*,
    246 Cal. App. 4th 1150 (2016), *review denied* (July 27, 2016) ................................24

*Laks v. Coast Fed. Sav. & Loan Ass'n*,
    60 Cal. App. 3d 885, 131 Cal. Rptr. 836 (Ct. App. 1976) ......................................24

**Federal Statutes**

28 U.S.C. 1367(c)(3) ............................................................................................21

29 U.S.C.
    § 1132(a) ............................................................................................................8
    § 1132(a)(1)(B) ................................................................................................16
    § 1132(a)(2) (1988) ...............................................................................9, 10, 18
    § 1132(a)(3) ......................................................................................................19
    § 1144(a) ...........................................................................................................22
    § 1182(a)(1) .................................................................................................14, 15

42 U.S.C.
    § 1395y(b)(1)(C)(i) ..........................................................................................14
    § 1395y(b)(1)(C)(ii) .........................................................................................14
    § 1395y(b)(2)(ii) ...............................................................................................13

Employee Retirement Income Security Act (ERISA), 29 U.S.C.
    § 1001 *et seq.* Second .............................................................................. *passim*

Medicare Secondary Payer Act, 42 U.S.C.A.
    § 1395y ...................................................................................................... *passim*

**Other Authorities**

29 C.F.R. § 2590.702(b)(2)(i)(B) .........................................................................15

29 C.F.R. § 2590.702(b)(2)(i)(D) .........................................................................15

42 C.F.R. §§ 411.108(a)(8), 411.161(b)(2)(iv) ....................................................14

Fed. R. Civ. P. 9(b) ..............................................................................................20

Fed. R. Civ. P. 12(b)(6) ..........................................................................................6

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ...................................1, 7

## MOTION TO DISMISS COMPLAINT AND NOTICE OF MOTION

Defendants Amy's Kitchen, Inc. ("Amy's Kitchen") and Amy's Kitchen, Inc. Employee Benefit Heath Plan ("Plan" or "Amy's Plan") respectfully submit the following motion to dismiss and supporting memorandum of points and authorities, and notice the motion for hearing on March 28, 2019 at 2:00 p.m., at Courtroom 9, 19th Floor, United States District Court, 450 Golden Gate Ave., San Francisco, California.

For the reasons set forth below, Defendants move this Court to dismiss the Complaint filed by Plaintiffs DaVita Inc. and Star Dialysis, LLC (together, "DaVita") in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). First, DaVita lacks standing to pursue (i) its claim under the Medicare Secondary Payer Act (MSPA), 42 U.S.C.A. § 1395y, as an assignee of Patient 1, and (ii) all of its claims under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq*. Second, the Complaint fails to state any federal claim on the merits. Absent a viable federal claim, the Court should dismiss the state law claims for lack of subject matter jurisdiction. Finally, each of DaVita's state law claims is preempted by ERISA and is not supported by sufficient factual allegations to state a plausible claim upon which relief may be granted. Defendants thus ask the Court to grant their motion to dismiss in full with prejudice.

## STATEMENT OF ISSUES TO BE DECIDED

(1) Whether DaVita lacks standing to bring claims under ERISA and, as an assignee, under the MSPA (Counts One, Two, Three, and Four);

(2) Whether DaVita fails to state a claim under the MSPA and for "illegal plan terms" under ERISA because it claims no discrimination between Plan members (Counts One and Two);

(3) Whether DaVita fails to state claims for equitable relief under ERISA (Counts Two and Four);

(4) Whether DaVita fails to state a claim for denial of benefits under ERISA (Count Three);

(5) Whether DaVita fails to state a claim for breach of fiduciary duty under ERISA (Count Four);

(6) Whether the Court lacks subject matter jurisdiction over DaVita's state claims (Count Five);

(7)  Whether DaVita's state law claims are preempted by ERISA (Count Five); and

(8) Whether DaVita has failed to state a claim for its state law causes of action (Count Five).

## SUPPORTING POINTS AND AUTHORITY

### I.   INTRODUCTION

This case is one of a series of lawsuits brought by DaVita, one of the two dominant dialysis providers in the market, to attack employers' self-funded ERISA health care plans that have tried to protect themselves and their members against DaVita's unreasonable and discriminatory charges for dialysis services. Because there are very few dialysis service providers in the market, DaVita has demanded staggering prices for dialysis treatment provided to patients who receive health coverage from their employers' ERISA plans instead of the government or commercial insurers that have greater bargaining power. To DaVita's displeasure, plans like the one maintained by Amy's Kitchen have begun adopting measures to reign in the excessive charges imposed by DaVita and other providers, in an effort to protect plan assets and members.

Specifically, in order to alleviate the burden imposed by dialysis costs—and pursuant to its fiduciary duty to its members to preserve plan assets—Amy's Plan adopted cost review measures for dialysis claims to ensure that the prices charged by providers are reasonable and not the product of market concentration and predatory, discriminatory pricing. In response, DaVita has filed a complaint that seeks to upend these cost containment measures by misapplying the MSPA, misapplying and circumventing ERISA, and tossing in groundless state law claims as well.

Given DaVita's goal and strategy, the Complaint unsurprisingly fails to allege cognizable claims for multiple reasons. As a threshold matter, DaVita lacks constitutional standing for its claim under the MSPA as an assignee of Patient 1 (Count One), and lacks constitutional and statutory standing to pursue all of its claims under ERISA (Counts Two, Three, and Four). Independently, all of DaVita's claims fail on the merits as well, for the myriad reasons set forth below. In short, DaVita's frustration at no longer receiving the excessive payments it has demanded from Amy's Plan is not actionable, as its claims have no basis in the law. Accordingly, DaVita's Complaint should be dismissed with prejudice and in its entirety.

### II.   BACKGROUND

#### A.   The Parties.

DaVita seeks damages for allegedly underpaid benefits and equitable relief in this suit

Case No. 3:18-cv-06975-JST
**DEFENDANTS' MOTION TO DISMISS**
2

against Amy's Plan and its sponsor and administrator, Amy's Kitchen. Complaint ¶¶ 1, 16, 60-98. DaVita purports to bring claims both in its own right, and as assignee of a Plan member to whom it has provided dialysis treatment since 2016 ("Patient 1"). *Id.* ¶¶ 8, 55-56(i).

DaVita alleges and admits that Amy's Plan is an "employee benefit plan" subject to ERISA, and that the Plan's purpose "is to provide [eligible Amy's employees] with medical and health benefits." *Id.* ¶¶ 15, 17. DaVita further alleges and admits that Amy's Kitchen is the Plan's sponsor and plan administrator and in that capacity "exercised discretionary authority and discretionary responsibility" in administering, and "were fiduciaries of," the Amy's Plan. *Id.* ¶ 16.

**B.     ERISA, Amy's Plan, and the Plan's Dialysis Program.**

As DaVita's Complaint alleges and admits, this case arises in the context of the ERISA Plan issued by Amy's Kitchen to provide health benefits to its employees and their families. A primary goal of ERISA is to "enable employers to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits." *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 148 (2001) (internal quotation marks omitted). ERISA does not require employers to offer benefits plans. Rather, Congress enacted ERISA with the underlying purpose of promoting efficiency, predictability, and uniformity so as to keep down costs and encourage employers to offer ERISA plans in the first instance. *Conkright v. Frommert*, 559 U.S. 506, 517 (2010). Plans must be able to control how such treatment will be reimbursed in order to remain viable and able to continue providing benefits to their members. Preventing plans from implementing changes to protect plan assets from discriminatory charging will not protect beneficiaries; on the contrary, it will discourage plans from providing any health insurance coverage at all. *C.f. Bins v. Exxon Co. U.S.A.*, 220 F.3d 1042, 1047 (9th Cir. 2000) ("Congress enacted ERISA to protect participants and beneficiaries of employee benefit plans without discouraging employers from offering such plans."). In line with its goals of uniformity and predictability, ERISA's regulatory scheme is "built around reliance on the face of written plan documents" that set forth "exactly" the benefits provided to members. *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995).

Plans have broad discretion to define the benefits they provide: "ERISA does not create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits." *Id.* at 83; *see Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) ("Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans"). And, in furtherance of ERISA's purpose to "provide a uniform regulatory regime over employee benefit plans . . . ERISA includes expansive pre-emption provisions, *see* ERISA § 514, 29 U.S.C. § 1144, which were enacted to ensure that employee benefit plan regulation would be exclusively a federal concern." *Aetna Health, Inc., v. Davila*, 542 U.S. 200, 208 (2004) (internal quotation marks omitted).

ERISA protects the rights of plan participants and beneficiaries. *Boggs v. Boggs*, 520 U.S. 833, 845, 117 S. Ct. 1754, 1762 (1997). Consequently, a health care provider such as DaVita may only bring suit under ERISA as an assignee of a participant or beneficiary's claim. *Spinedex Phys. Therapy USA Inc. v. United Healthcare of Ariz., Inc.,* 770 F.3d 1282, 1289 (9th Cir. 2014). Furthermore, ERISA requires plan fiduciaries such as Amy's Kitchen to conserve plan assets, and to administer the plan "prudently and in the interest of Plan participants and beneficiaries." Amy's Kitchen, Inc. Employee Benefit Health Plan Plan Document and Summary Plan Description, eff. Jan. 1, 2017 ("Plan Document") (attached as Exhibit A to Declaration of Carme Lewis, filed herewith) at 2.[1] *See Acosta v. Brain*, 910 F.3d 502, 516-17 (9th Cir. 2018).

DaVita admits that "[t]his case arises from the Plan's efforts to save money on dialysis treatment." Complaint ¶ 39. Specifically, as of January 1, 2017, the Plan was amended to adopt a "Dialysis Benefit Preservation Program." *Id*. ¶ 41. Under the terms this program, "all dialysis-

---

[1] The Court may consider the Amy's Plan Document in ruling on a motion to dismiss without converting it to a summary judgment motion because DaVita's Complaint expressly and repeatedly references and necessarily relies upon the Plan Document. *See, e.g.,* Complaint ¶¶ 4, 7, 30-31, 41-42, 48-49, 51. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *see also Vyas v. Vyas*, No. CV1502152RSWLDFMX, 2016 WL 7496749, at *3 (C.D. Cal. Nov. 3, 2016) (considering benefits plan document not included with complaint on motion to dismiss ERISA claim); *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc*., 99 F. Supp. 3d 1110, 1125 (C.D. Cal. 2015) (same).

related claims are subject to 'mandated cost review," and DaVita alleges this has resulted in "*all* dialysis claims" being processed by the Plan on a non-network basis. *Id.* ¶¶ 41, 44 (emphasis in original). DaVita alleges that this has resulted in it being paid less. *Id.* ¶ 56(g).

The Plan Document explains to Plan members the reasons for the adoption of the Dialysis Program; namely, that the market for dialysis services is highly concentrated, allowing providers like DaVita to discriminatorily charge plans like Amy's Plan much higher rates for dialysis than they charge government and commercial payers in order to subsidize those larger payers. Specifically, the Plan cites four primary reasons for the adoption of the cost-control measures embodied in the Dialysis Program: (1) "the concentration of dialysis providers" in certain markets "may allow such providers to exercise control over prices for dialysis-related products and services"; (2) as a non-government and non-commercial health plan, the Plan faces a "potential for discrimination" by dialysis providers, "which discrimination may lead to increased prices for dialysis-related products and services" provided to Plan members; (3) evidence reflects precisely this sort of discrimination through "significant inflation" of prices for services to Plan members by dialysis providers—which dialysis providers then use to "subsidize reduced prices to other types of payers"; and (4) the Plan has "the fiduciary obligation to preserve Plan assets" from dialysis provider charges that "(i) exceed reasonable value due to factors not beneficial to covered persons, such as market concentration and discrimination in charges, and (ii) are used by the dialysis providers for purposes contrary to the covered persons' interests, such as subsidies for other plans and discriminatory profit-taking." Plan Document at 32.

To effectuate these purposes and fight back against predatory dialysis providers, the Plan provides that the Dialysis Program "shall be the exclusive means" of determining rates for dialysis services, "regardless of the condition causing the need for dialysis." *Id.* Under the Plan's mandated cost review of dialysis claims, the plan administrator determines whether charges for dialysis services "indicate the effects of market concentration or discrimination in charges," taking into consideration "whether the market for outpatient dialysis products and services is sufficiently concentrated to permit providers to exercise control over charges due to limited competition," and

"whether the claims reflect potential discrimination against the Plan." *Id.* Upon such review, "the plan administrator may, in its sole discretion, determine that there is a reasonable probability that the charges exceed the reasonable value of the goods and/or services." *Id*. at 32-33. The Dialysis Program section of the Plan states that "the plan administrator shall have full authority and discretion to interpret, further administer and apply this Section." *Id*. at 33.

### C.   DaVita Receives Reimbursements Pursuant to the Amended Plan.

DaVita alleges that prior to January 1, 2017, the Plan paid DaVita at network rates DaVita negotiated with Blue Cross of Oregon, but that beginning on that date, the Plan provided payments to DaVita that were "far less" than its former contract rate. Complaint ¶¶ 34, 56(g). DaVita further pleads that "Patient 1 continues to receive treatment from DaVita," and "[t]he Plan has continued to authorize payment to be sent directly to DaVita," albeit "at levels far less than DaVita's contracted rate with Blue Cross of Oregon." *Id.* ¶ 56(i). The Plan was under no contract to provide reimbursement to DaVita at any particular rate from January 1, 2017, onward, nor does DaVita allege any such contractual obligation.

### III.   APPLICABLE LEGAL STANDARDS

A plaintiff's standing to bring suit under Article III of the Constitution poses a threshold requirement for a court's exercise of subject matter jurisdiction over an action. *Bates v. United Parcel Serv., Inc*., 511 F.3d 974, 985 (9th Cir. 2007). Constitutional standing requires that (1) the plaintiff suffered an injury in fact, *i.e*., an injury sufficiently "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) the injury is "fairly traceable" to the defendant's conduct, and (3) the injury is "likely" to be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (quotation marks and citations omitted). A plaintiff must show its standing "with respect to each form of relief sought, whether it be injunctive relief, damages or civil penalties." *Id*.

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

1   *Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). In the case of a statutory claim, this requires a

2   plaintiff to plead facts showing statutory standing. *In re Century Aluminum Co. Sec. Litig.*, 729

3   F.3d 1104, 1109 (9th Cir. 2013). "A claim has facial plausibility when the plaintiff pleads factual

4   content that allows the court to draw the reasonable inference that the defendant is liable for the

5   misconduct alleged." *Kwan v. SanMedica Int'l,* 854 F.3d 1088, 1096 (9th Cir. 2017) (citation

6   omitted). Thus, DaVita must show "more than a mere possibility of misconduct." *Iqbal*, 556 U.S.

7   at 679; *Kwan*, 854 F.3d at 1096. While the Court must accept as true all well-pled factual

8   allegations in the complaint, it is "not bound to accept as true a legal conclusion couched as a

9   factual allegation." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir.

10  2010) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by

11  mere conclusory statements, do not suffice," and "are not entitled to the assumption of truth."

12  *Iqbal*, 556 U.S. at 678, 679 (internal citations omitted). This is particularly important because the

13  pleading rules do "not unlock the doors of discovery for a plaintiff armed with nothing more than

14  conclusions." *Id.* at 678-79.

15  **IV.   ARGUMENT**

16       DaVita asserts five counts against Amy's Kitchen and the Plan: double damages for

17  violation of the MSPA (Count One), injunctive and equitable relief under ERISA (Count Two),

18  payment of benefits under ERISA (Count Three), equitable relief under ERISA for

19  misrepresentation constituting breach of fiduciary duty (Count Four), and state law causes of

20  action for negligent misrepresentation, promissory estoppel, and quantum meruit (Count Five). *Id.*

21  ¶¶ 66-98. All of the ERISA counts should be dismissed for lack of standing and failure to state a

22  claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(1) & 12(b)(6). As for the MSPA

23  count, DaVita similarly lacks standing to bring that claim as an assignee of Patient 1, and has

24  failed to state a claim in any event. Finally, subject matter jurisdiction over the state law claims

25  should be rejected with the dismissal of the federal claims, and the state law claims all fail for the

26  independent reasons that (i) they are preempted by ERISA, and (ii) DaVita has failed to plead

27  facts stating a claim under any of its state law theories.

28

### A. DaVita Lacks Standing to Bring Its Claims under ERISA and Its Claim under the MSPA as an Assignee of Patient 1.

DaVita's ERISA claims (Counts Two, Three, and Four), which it apparently brings as an assignee of Patient 1 and in its own right, entirely fail for lack of standing. Under ERISA, DaVita lacks statutory standing to bring a claim in its own right and lacks Article III standing to bring a claim as Patient 1's assignee.[2] DaVita also lacks Article III standing to bring its claim under the MSPA (Count One) as an assignee of Patient 1.

### (1)   DaVita Lacks Standing to Bring Its ERISA Claims in Its Own Right (Counts Two, Three, and Four).

DaVita lacks statutory standing under ERISA to bring a claim in its own right. ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), identifies only plan participants, beneficiaries, fiduciaries, and the Secretary of Labor as "[p]ersons empowered to bring a civil action." DaVita is none of these. Rather, it is a health care provider, and "health care providers are not 'beneficiaries' within the meaning of ERISA's enforcement provisions." *DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 873 (9th Cir. 2017); *see Spinedex*, 770 F.3d at 1289 (non-participant health care provider may not bring a claim under ERISA for benefits on its own behalf). DaVita's Complaint is not entirely clear about whether DaVita asserts ERISA claims in its own right, but to the extent it does, they must be dismissed for lack of statutory standing.

### (2)   DaVita Lacks Article III Standing to Pursue Claims for Equitable Relief Because It Lacks an Assignment of Those Rights (Counts Two and Four).

DaVita may only bring its ERISA claims as an assignee. Thus, only an injury-in-fact suffered by the assignor—Patient 1—will suffice to establish constitutional standing to sue under ERISA. *See In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 897 (C.D. Cal. 2012). Absent a valid assignment that encompasses DaVita's ERISA claims, DaVita lacks Article III standing to sue as assignee. *Id.* Here, DaVita lacks standing to sue for breach of

---

[2] Although Article III standing presents a threshold issue of the Court's subject matter jurisdiction, Defendants begin with statutory standing because it clarifies the Article III analysis.

fiduciary duty and for equitable relief under ERISA, as it purports to do in Counts Two and Four, because the assignment form executed by Patient 1 assigns only claims for payment of benefits.

Indeed, the intent of DaVita's patient assignment form is spelled out in express terms. On the very first page, the assignment states "[t]he purpose of this document" as follows: the patient is "assigning rights *to payments from my insurer* and authorizing DaVita to obtain the necessary information *to obtain such payment*." DaVita Patient Acknowledgment, Authorization and Financial Responsibility Form ("Assignment") (attached as Ex. B to Lewis Decl.), at 1 (emphasis added).[3] The form makes no mention at all of an assignment of the right to pursue a claim for breach of fiduciary duty. *See In re WellPoint*, 903 F. Supp. 2d at 896 ("[O]nly an express and knowing assignment of an ERISA fiduciary breach claim [under § 1132(a)(2)] is valid."). Nor does the form reference any claims for equitable relief; rather, the entirety of the form is directed at the pursuit of unpaid benefits to which the beneficiary is entitled under the Plan.

The Ninth Circuit construes assignments of ERISA claims narrowly, and DaVita's assignment form does not assign any right beyond a right to payments provided by the Plan to the plan participant. For example, in *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282 (9th Cir. 2014), the assignment form stated, "[t]his is a direct assignment of my rights and benefits under this policy." *Id*. at 1292. Despite this broad language, however, the court held that "the entirety of the Assignment indicates that patients intended to assign to [the provider] only their rights to bring suit for payment of benefits," and thus the provider could not bring separate claims for anything beyond such payment. *Id*. Similarly, in *Eden Surgical Center v. B. Braun Medical, Inc.*, 420 F. App'x 696 (9th Cir. 2011), the court found that the plaintiff's right to pursue assigned causes of action was limited to actions "pursued during a

---

[3] DaVita's Complaint both expressly refers to and necessarily relies upon "the Assignment" form, *see* Complaint ¶ 56(d), and that form may therefore be considered by the Court on a motion to dismiss. *Lee*, 250 F.3d at 688. Amy's Kitchen and the Plan share DaVita's concern about protecting patient privacy and its willingness to provide patient identifying information in an appropriate manner upon request, *see* Complaint ¶ 55 n.1, and thus have redacted patient identifying information in the Assignment filed with the Court.

process 'necessary to collect claims,'" as set forth in the assignment. *Id*. at 697; *see also In re WellPoint,* 903 F. Supp. 2d at 896 ("[O]nly an express and knowing assignment of an ERISA fiduciary breach claim [under § 1132(a)(2)] is valid."); *DB Healthcare,* 852 F.3d at 877 (dismissing provider's claim for relief beyond payment of benefits where the assignment language referred only to recovery of benefits).

Here, even more clearly than in *Spinedex*, "the entirety of the Assignment indicates that [Patient 1] intended to assign to [DaVita] only [his or her] rights to bring suit for payment of benefits." 770 F.3d at 1292. Because DaVita must establish constitutional standing through injury-in-fact suffered by an assignor, its claims for breach of fiduciary duty and equitable relief necessarily fail for the lack of a valid assignment. *See Misic v. Bldg. Serv. Employees Health & Welfare Tr*., 789 F.2d 1374, 1378 (9th Cir. 1986) (assignee's rights are limited to those possessed by assignor).

### (3)   DaVita Lacks Article III Standing to Bring Its Claim for Benefits under ERISA Because Patient 1 Has Suffered No Injury-in-Fact (Count Three).

Absent an injury sufficient to confer Article III standing on Patient 1, DaVita cannot assert a claim on Patient 1's behalf. DaVita's claim for denial of benefits (Count Three) therefore fails, as the Complaint alleges no injury actually suffered by Patient 1.

DaVita does not claim that Patient 1 was denied benefits by the Plan—indeed, it explicitly pleads that Patient 1 continues to receive dialysis treatment, and that DaVita has continued to receive payments pursuant to the amended Plan terms. Complaint ¶ 56(i). Instead, DaVita's Count Three asserts that "ERISA beneficiaries are entitled to receive the benefits promised under the terms of the plan of which they are members." *Id*. ¶ 80. Those benefits consist in relevant part of dialysis treatment charges reimbursed at a "Usual and Reasonable" rate, as that rate is defined by the Plan. *Id*. ¶ 82. But reimbursement for dialysis at a "Usual and Reasonable" rate *is exactly what DaVita alleges it received* as Patient 1's assignee. Moreover, DaVita does not allege any denial of treatment or out-of-pocket expenses incurred by Patient 1. Accordingly, DaVita has pleaded no "actual injury" suffered by Patient 1 sufficient to establish constitutional standing for Count Three.

1

**(4)      DaVita Lacks Article III Standing to Bring a Claim under the MSPA as an Assignee (Count One).**

2

3       DaVita purports to bring its claim under the MSPA "both in its own right and as Patient 1's

4   assignee," Complaint ¶ 73, but it lacks Article III standing to pursue such a claim as an assignee

5   because it once again fails to plead an injury-in-fact suffered by Patient 1. As the case law DaVita

6   itself cites in the Complaint explains, the MSPA allows "a private party to bring an action to

7   recover from a private insurer only where that private party has itself suffered an injury because a

8   primary plan has failed to make a required payment to or on behalf of it." *Woods v. Empire Health*

9   *Choice, Inc.*, 574 F.3d 92, 101 (2d Cir. 2009). DaVita pleads no such injury suffered by Patient 1,

10   and accordingly lacks Article III standing to sue of Patient 1's behalf.

11       DaVita alleges that "the Plan's failure to make required payments, in violation of the

12   MSPA, has injured ESRD beneficiaries by exposing them to significant payment obligations"

13   because "[d]ialysis providers are entitled to collect, and consequently beneficiaries are obligated to

14   pay, the difference between the Plan's improperly low payment rate and the providers' usual and

15   customary charges." Complaint ¶ 71. But DaVita does not allege any actual "payment obligation"

16   incurred or borne by Patient 1. At most, DaVita suggests the hypothetical possibility that it might

17   *potentially*, at some point in the future, seek to collect additional payments from Patient 1 through

18   balance-billing. But, in fact, Medicare participating providers like DaVita are prohibited from

19   balance-billing any patient enrolled in Medicare. *PacifiCare of Ariz., Inc. v. Surgical Assistant*

20   *Assocs., L.L.C.*, No. CV06-00132-PHX-NVW, 2007 WL 708833, at *4-5 (D. Ariz. Mar. 2, 2007).

21   Moreover, any hypothetical future costs do not constitute an actual, concrete injury sufficient to

22   confer Article III standing. *See Frazer v. CNA Ins. Co.*, 374 F. Supp. 2d 1067, 1078-79 (N.D. Ala.

23   2005) (MSPA claims may not be premised on "inchoate future medical expense[s]"); *see also*

24   *Bryant v. Am. Seafoods Co.*, 348 Fed. App'x. 256 (9th Cir. 2009) (fact that employees might

25   "some day" be charged for balance allegedly owed to medical providers is not sufficient to confer

26   Article III standing); *Owen v. Regence Blue Cross Blue Shield of Utah*, 388 F. Supp. 2d 1318,

27   1326 (D. Utah 2005) (possibility that medical provider may attempt to collect balance from patient

28   sometime in the future does not constitute injury sufficient for Article III standing); *c.f. Spokeo,*

*Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), *as revised* (May 24, 2016) ("Article III standing requires a concrete injury even in the context of a statutory violation.").

In sum, DaVita lacks constitutional standing to bring a claim for violation of the MSPA as Patient 1's assignee. This lack of injury to Patient 1 applies to DaVita's to claim for benefits under ERISA (Count Three) as well, and further underscores why both claims—and the equally flawed claims in Counts Two and Four—must be dismissed.

**B.       DaVita Fails to State Any Federal Claim Upon Which Relief Can Be Granted.**

DaVita's federal claims also fail on the following additional, independent grounds.

*(1)       DaVita Has Not Alleged Any Expenses Actually Borne by Medicare as Required to State a Claim Under the MSPA (Count One).*

DaVita fails to allege that Medicare advanced any medical costs on behalf of Patient 1 or any other Amy's Plan participant (because it didn't)—and this is a requirement that courts have consistently imposed on plaintiffs in order to state a claim under the MSPA. As set forth in Defendant's own cited authority, *Bio-Medical Applications of Tennessee v. Central States Southeast & Southwest Areas Health & Welfare Fund*, 656 F.3d 277 (6th Cir. 2011), a primary insurer or plan becomes liable in a private action under the MSPA when it discriminates against a member on the basis of Medicare eligibility and thereby "***causes Medicare to step in and (temporarily) foot the bill***." *Id.* at 286 (emphasis added in this and subsequent citations); *see also Parra v. PacifiCare of Ariz., Inc.,* 715 F.3d 1146, 1152 (9th Cir. 2013) ("The private cause of action allows Medicare beneficiaries and healthcare providers to recover medical expenses from primary plans."); *Hapeville Dialysis Ctr., LLC v. City of Atlanta, Ga.,* 2013 WL 831635, at *3 (N.D. Ga. 2013) (holding that "to sustain a private cause of action under the MSPA, the complaint must allege that payment was made by Medicare"); *Frazer*, 374 F. Supp. 2d at 1078 ("The consensus of reported cases is that [the MSPA authorizes] 'a private cause of action and double damages against entities designated as primary payers that fail to pay for medical costs for which they are responsible, which are ***borne in fact by Medicare***'"); *Bio-Medical App. of Ga. v. City of Dalton, Ga.*, 685 F. Supp. 2d 1321, 1332 (N.D. Ga. 2009); *Leggette, et al. v. B.V. Hedrick Gravel*

& Sand Co., Case No. 3:04–CV–00530–CH, at *19 (W.D.N.C. May 24, 2006); *Woods v. Empire Health Choice, Inc*., No. 05–CV–0577 (DLI)(LB), 2007 WL 2406876, at *2 (E.D.N.Y. Aug. 20, 2007); *Glover v. Philip Morris USA*, 380 F. Supp. 2d 1279, 1282 (M.D. Fla. 2005).

DaVita's Complaint does not allege that Medicare made any payments. To the contrary, DaVita alleges that *the Plan* continued to make payments (albeit at a rate lower than DaVita would like). Complaint ¶ 50. Accordingly, DaVita has failed to state a claim under the MSPA. *Glover v. Liggett Grp., Inc*., 459 F.3d 1304, 1307 (11th Cir. 2006) (the MSPA "encourage[s] private parties who are aware of non-payment by primary plans to enforce Medicare's rights"); *Manning v. Utilities Mut. Ins. Co.*, 254 F.3d 387, 394 (2d Cir. 2001) (MSPA allows private party to file suit for "wrong done to the government").[4]

DaVita's failure to plead an actionable claim under the MSPA is highlighted by the remedy it seeks—payment to DaVita of the difference between the Medicare rate and its alleged "usual and customary" or UCR rate. That remedy provides no benefit to Medicare. *See Nat'l Renal Alliance, LLC v. Blue Cross & Blue Shield of Ga., Inc.,* 598 F. Supp. 2d 1344, 1355 (N.D. Ga. 2009) (dismissing MSPA claim and stating that damages theory asserted by plaintiffs had no impact on Medicare). The inclusion of a private right of action in the MSPA "is clearly based in turn upon the subrogation right of the government to obtain a portion of the recovery. This recovery of costs by Medicare is the primary purpose of the MSP." *Frazer*, 374 F. Supp. 2d at 1077–78.[5] In short, the MSPA incentivizes a private party that has itself suffered an injury to bring a civil action for damages that will ultimately help make Medicare whole; DaVita has alleged no injury to Medicare at all, and accordingly has failed to state a claim under the act.

---

[4] Speculative, hypothetical future payments by Medicare do not support a claim under the MSPA. *See Stalley v. Catholic Health Initiatives*, 458 F. Supp. 2d 958, 965 (E.D. Ark. 2006), *aff'd* 509 F.3d 517 (8th Cir. 2007).

[5] Accordingly, the statute requires a private litigant who recovers reimbursement for denied claims which were paid by Medicare to then turn over the amounts of such claim to the government. *See* 42 U.S.C. § 1395y(b)(2)(ii) (providing action by the United States to recovery from "any other entity" that has received payment from the primary plan responsible for payments under the MSPA).

1

### (2)   *DaVita Has Not Alleged Any Discrimination Between Plan Members as Required to State a Claim Under the MSPA or for "Illegal Plan Terms" Under ERISA (Counts One and Two).*

2

3   In order to state a claim under the MSPA, DaVita must also plead facts showing that the

4   Plan "t[ook] into account that an individual is entitled to or eligible for" Medicare based on ESRD,

5   42 U.S.C. § 1395y(b)(1)(C)(i), or that the Plan "differentiat[ed] in the benefits it provides between

6   individuals having end stage renal disease and other individuals covered by such plan," 42 U.S.C.

7   § 1395y(b)(1)(C)(ii). MSPA regulations define "taking into account" or "differentiating" to mean

8   "pay[ing] providers and suppliers less for services furnished to a Medicare beneficiary than for the

9   same services furnished to an enrollee who is not entitled to Medicare." 42 C.F.R.

10   §§ 411.108(a)(8), 411.161(b)(2)(iv) (emphasis added). Similarly, ERISA provides for equitable

11   relief if a plan establishes rules of eligibility that differentiate between similarly situated members

12   based on health status or medical condition. *See* 29 U.S.C. § 1182(a)(1).

13   The Complaint does not meet these requirements. DaVita does not allege any disparity of

14   treatment between ESRD patients (who are entitled to enroll in Medicare) and non-Medicare-

15   eligible dialysis patients, nor does it plead any rules of eligibility that render Medicare-eligible

16   members with ESRD ineligible for coverage. On the contrary, the Complaint alleges that members

17   with ESRD remain covered by the Plan and continue to receive treatment. The allegations

18   emphasize that the Plan has differentiated solely on the basis of the medical service provided

19   (dialysis), not the fact of a Plan member's ESRD diagnosis or Medicare eligibility. *See, e.g.*,

20   Complaint ¶ 44 (alleging "the Plan's third-party claims administrator has processed *all* dialysis

21   claims on a non-network basis since January 1, 2017"). Indeed, the Plan's plain terms establish

22   equal treatment of ***all*** dialysis patients and claims: "The Dialysis Program shall be the exclusive

23   means for determining the amount of Plan benefits to be provided to covered persons and for

24   managing cases and claims involving dialysis services and supplies, ***regardless of the condition***

25   ***causing the need for dialysis***." Plan Document at 32 (emphasis added).

26   As made clear by the Plan's terms, the adoption of the Dialysis Program is not

27   "discrimination" at all; it is instead a cost-containing plan design decision not actionable under the

28

MSPA. DaVita alleges that "the Plan no longer treats *dialysis providers* that are part of the Blue Cross network as in-network providers," and that "*no dialysis provider* has entered into an agreement with the Plan, so *dialysis* is no longer subject to in-network coverage." Complaint ¶ 63(a) (emphases added); *see id.* ¶ 44. But these allegations are to no avail. As set forth in the Plan Document itself, the Dialysis Program was intended to provide exactly the sort of cost-containment measure contemplated by the MSPA. *See* Plan Document at 32; *see also Nat'l Renal Alliance*, 598 F. Supp. 2d at 1354 (holding that decision to provide lower reimbursement rates to dialysis providers did not violate the MSPA by "taking into account" or "differentiating" between members because the plan provided "the same level of reimbursement for out-of-network dialysis treatment ***regardless of the insured's reason for receiving the treatment***" (emphasis added)).

Furthermore, the regulations implementing ERISA make clear that a plan "may limit or exclude benefits in relation to a specific disease or condition [or] limit or exclude benefits for certain types of treatments or drugs . . . but only if the benefit limitation or exclusion applies uniformly to all similarly situated individuals and is not directed at individual participants or beneficiaries based on any health factor of the participants or beneficiaries." 29 C.F.R. § 2590.702(b)(2)(i)(B). As the Plan clearly states, and DaVita itself alleges, the Plan's Dialysis Program applies to "*all* dialysis" patients and providers. DaVita's claims under the MSPA and for equitable relief pursuant to ERISA, 29 U.S.C. § 1182(a)(1), must therefore be dismissed.[6]

### *(3)   DaVita Fails to State a Claim For Benefits Under ERISA (Count Three).*

Section 502(a)(1)(B) of ERISA allows for recovery of benefits due "under the terms of [an

---

[6] The Complaint cites to an example from ERISA regulations describing a plan's differentiated treatment for members with AIDS as a probable ERISA violation. Complaint ¶ 77. But this example is inapposite: It describes discrimination against an individual on the basis of that person's condition (AIDS), rather than a wholesale revision of how a plan handles reimbursement for a given medical service regardless of the condition prompting need for the service. The regulations also provide, as an example of a ***permissible*** plan limitation, a plan's $2,000 limit on lifetime treatment of temporomandibular joint syndrome (TMJ) applied to all members with TMJ. 29 C.F.R. § 2590.702(b)(2)(i)(D). In this case DaVita alleges precisely such a blanket limitation applied to "*all* dialysis" claims. Complaint ¶ 44.

ERISA] plan." 29 U.S.C. § 1132(a)(1)(B). "In order to state a claim for denial of benefits under ERISA, Plaintiffs must allege plausible facts showing they were owed benefits under the . . . Plan. This requires Plaintiffs to allege (1) the existence of an ERISA plan, and to identify (2) the provisions under the plan that entitle [them] to benefits." *B.R. v. Beacon Health Options*, No. 16-CV-04576-MEJ, 2017 WL 5665667, at *3 (N.D. Cal. Nov. 27, 2017) (citations and quotation marks omitted). Here, DaVita fails to plead any plan provision entitling it to benefits that were actually denied. In *Doe One v. CVS Pharmacy, Inc.*, No. 18-CV-01031-EMC, 2018 WL 6574191 (N.D. Cal. Dec. 12, 2018), the court dismissed a complaint seeking benefit payments under ERISA because the plaintiffs had "not identified the provisions of the plan that entitle them to the benefits they seek. Indeed, their challenge [was] to the overall scope of the plan, not denial of benefits under the plan." *Id.* at *14. The same is true here. DaVita has identified no Plan provision entitling it to the benefits it now seeks.[7] Instead, it is challenging the substance of the Plan's defined benefits, which under ERISA it has no right to do.

Having failed to identify any Plan provision entitling it to additional payment of benefits, DaVita has necessarily also failed to plead any abuse of discretion by the plan administrator, which is also required to state a claim. As the Supreme Court has explained, "an ERISA plan administrator with discretionary authority to interpret a plan is entitled to deference in exercising that discretion." *Conkright*, 559 U.S. at 509 (citation omitted); *see Verducci v. Teamsters Benefit Tr.*, No. 12-CV-03189-JST, 2013 WL 6000574, at *4 (N.D. Cal. Nov. 12, 2013) (granting

---

[7] DaVita's assertion that "[t]he Plan's definition of 'Usual and Reasonable' does not permit the Plan to factor Medicare rates into its determination of what amount constitutes a 'Usual and Reasonable' charge," Complaint ¶ 82, is both inapposite and inaccurate. First, DaVita alleges no facts indicating that the Plan miscalculated payments constituting a "Usual and Reasonable" rate; rather, it contests the Plan's decision to provide a "Usual and Reasonable" rate that expressly differs from a "usual and customary" rate. *See* Complaint, ¶ 49. Second, the Plan terms (1) require that the plan administrator calculate a "Usual and Reasonable rate" taking into consideration "the average payment actually made for reasonably comparable services"—which would include Medicare payments—and (2) grant the administrator full discretion in applying the Dialysis Program's terms. Plan Document at 33.

summary judgment to ERISA defendant where plaintiff failed to show trust abused its discretion in denying benefits); *McIntyre v. Carpenters Health & Sec. Tr. of W. Wash.*, No. C05-5724FDB, 2006 WL 118249, at *7 (W.D. Wash. Jan. 13, 2006) (granting ERISA plan's motion to dismiss because its "decision to cease advancing benefits subject to the reimbursement provisions is not an abuse of discretion"). The terms of Amy's Plan require the plan administrator to determine the "Usual and Reasonable" value of dialysis services provided. Plan Document at 33; *see* Complaint ¶ 49. The Plan expressly states that "[t]he plan administrator shall have full authority and discretion to interpret, administer and apply" the Dialysis Program section of the Plan. Plan Document at 33. Additionally, a Plan enrollee or its assignee may submit additional information regarding the service, and "[i]n the event the plan administrator, *in its sole discretion*, determines that such information demonstrates that the payment for the claim or claims did not reflect the reasonable value, the plan administrator shall increase or decrease the payments (as applicable) to the amount of the reasonable value, as determined by the plan administrator based upon credible information from identified sources." *Id.* (emphasis added). DaVita does not claim that the plan administrator abused its discretion under the plan in determining payment amounts. Instead, DaVita is again challenging the terms of the Plan itself—which terms Amy's Kitchen was free to amend and adopt. *See Curtiss-Wright Corp.*, 514 U.S. at 78. Once again, the Complaint thus fails to state a claim for benefits under ERISA, and Count Three must be dismissed.[8]

### (4)   DaVita Fails to State a Claim for Breach of Fiduciary Duty (Count Four).

DaVita fails to state a claim for breach of fiduciary duty under ERISA based on an alleged failure to disclose and misrepresentation. ERISA authorizes the Secretary of Labor or a

---

[8] DaVita is also required to exhaust its remedies under the Plan with respect to Count Three. DaVita pleads that "[t]he denials issued by the Amy's Plan do not all comply with ERISA's requirements." *Id.* ¶¶ 57(h), 59. This conclusory allegation is insufficient as a matter of law and, to the extent DaVita relies on this conclusory assertion to establish that exhausting its remedies would be futile, it has failed to adequately plead futility that would excuse it from exhaustion. *See Hansen v. Jeffco Painting & Coating, Inc.*, No. C 93-0082 BAC, 1993 WL 204260, at *2 (N.D. Cal. June 8, 1993); *In re WellPoint*, 903 F. Supp. 2d at 919.

participant, beneficiary, or fiduciary of a plan to bring a civil action for breach of fiduciary duty in connection with the administration of the plan. *See* 29 U.S.C. § 1132(a)(2) (1988); *Acosta v. Pac. Enterprises*, 950 F.2d 611, 619 (9th Cir. 1991), *as amended on reh'g* (Jan. 23, 1992). Section 404(a) of the ERISA statute provides that a fiduciary must discharge its duties "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." *Id*. § 1104(a)(1)(A). While "common law trust duties regarding the disclosure of information to beneficiaries may be read into ERISA through section 404(a)," such disclosure principles apply "only to the extent that they relate to the provision of benefits or the defrayment of expenses." *Acosta*, 950 F.2d at 619.

Here, DaVita does not allege any material term regarding either benefits available under the Plan or the Plan's defrayment of expenses that the Plan failed to disclose or misrepresent to a beneficiary—nor could it. The Plan clearly sets forth the availability of reimbursement for dialysis treatment and the conditions under which claims for dialysis reimbursement will be processed. The Summary of Benefits at the very front of the Plan Document clearly indicates that characterization of a claim or provider as "in-network" or "out-of-network" is irrelevant for dialysis claims; instead, it states that dialysis benefits include "100% of the Usual and Reasonable Charge after all applicable deductibles and coinsurance," and directs beneficiaries to "[p]lease refer to Dialysis Treatment - Outpatient Description In the Medical Expense Benefit section." Plan Document at 10. That section of the Plan document clearly sets forth the components of and reasons for the Dialysis Program, explaining that the Plan has a "fiduciary obligation to preserve Plan assets against charges which (i) exceed reasonable value due to factors not beneficial to covered persons, such as market concentration and discrimination in charges, and (ii) are used by the dialysis providers for purposes contrary to the covered persons' interests." *Id*. at 32.

In other words, far from misrepresenting anything or breaching its duty to disclose, the Plan clearly explains the benefits provided to its members, including the terms under which dialysis providers will be compensated. The Plan explains that its "Dialysis Program shall be the exclusive means for determining the amount of Plan benefits to be provided to covered persons

and for managing cases and claims involving dialysis services and supplies, regardless of the condition causing the need for dialysis," and that as part of this program all dialysis treatment shall be subject to "mandated cost review." Plan Document at 32. Further, it explicitly states that even where a provider is or has been a "preferred provider," its payment rate will be subject to the Dialysis Program. *Id*. at 33. Similarly, the Plan clearly states that dialysis services are subject to a different reimbursement calculation than other treatments. Indeed, DaVita's *own allegations* admit this, stating that the Plan reimburses dialysis providers at a "Usual and Reasonable" rate, and that under the Plan, "[t]he term 'usual and customary' is not intended to be the same as the term 'Usual and Reasonable,' as that term is defined in the Dialysis Treatment-Outpatient provision in the Medical Expense Benefit section." Complaint ¶ 49. Once again, DaVita has identified no omission, misrepresentation, or misleading statement in the Plan that could give rise to a claim for breach of fiduciary duty.[9] Count Four should therefore be dismissed.

> ### (5)   *DaVita Further Fails to Plead Facts Sufficient to Support the Specific Equitable Relief Sought of Surcharge, Reformation, and Estoppel (Claims Two and Four).*

DaVita has not pleaded—and cannot plead—facts supporting entitlement to reformation (Counts Two and Four), surcharge (Count Four), and estoppel (Count Four), each of which has specific requirements that DaVita's Complaint entirely fails to meet.[10]

---

[9] DaVita's claim for breach of fiduciary duty also fails for lack of reliance. DaVita must necessarily assert its claim derivatively as an assignee. *See supra,* Section IV.A.1. No such claim has been validly assigned to DaVita by Patient 1 or any other Plan beneficiary, but even if it had, DaVita does not claim reliance by a *Plan beneficiary* on the Plan's representation of whether rates paid to dialysis providers consider the rates paid by Medicare. This also dooms DaVita's claim.

[10] DaVita also improperly attempts to invoke equitable relief available under ERISA to remedy a purported violation of the MSPA, Complaint ¶¶ 75-76, without any legal basis to do so. ERISA provides *only* for a civil action brought "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;…" 29 U.S.C. § 1132(a)(3). Nothing in the text of ERISA provides a remedy for violations of the MSPA. DaVita's bare legal assertion that it "is entitled to use 29 U.S.C. § 1132(a)(3) of ERISA. . . to seek redress for the Plan's violation of the MSPA," Complaint ¶¶ 75-76, is unfounded and incorrect.

1    Surcharge is available where a breach of fiduciary duty causes a plan's unjust enrichment

2    or "actual harm" to a plan beneficiary. *CIGNA Corp. v. Amara*, 563 U.S. 421, 444, 131 S. Ct.

3    1866, 1882, 179 L. Ed. 2d 843 (2011). In *Skinner v. Northrop Grumman Retirement Plan B*, 673

4    F.3d 1162 (9th Cir. 2012), the Ninth Circuit affirmed the district court's dismissal of a claim for

5    surcharge based on a fiduciary's failure to provide a full and accurate summary plan description

6    (SPD) because the fiduciary did not gain any benefit from the breach and plaintiffs "did not rely

7    on the inaccurate SPD" to establish any "harm for which they should be compensated." *Id.* at

8    1167. DaVita similarly has not pleaded any unjust enrichment to the Plan flowing from a failure to

9    provide information, nor has it asserted any "actual harm" to a plan member caused by failure to

10   provide information. Surcharge is consequently not a form of relief available to DaVita.

11   A party is entitled to seek reformation only where "a mistake of fact or law affected the

12   terms of the Plan," or where the beneficiary sufficiently pleads fraud. *Gabriel v. Alaska Elec.*

13   *Pension Fund*, 773 F.3d 945, 961-62 (9th Cir. 2014). DaVita has not alleged any mistake affecting

14   the terms of the Plan. *See id.* ("Gabriel cannot meet [the reformation] standard as a matter of law,

15   because the Plan itself does not contain an error."). Similarly, DaVita has not alleged fraud, nor

16   has it pleaded anything close to the specific facts necessary to support an allegation of fraud. *See*

17   Fed. R. Civ. P. 9(b). DaVita therefore has no basis to seek reformation of the Plan.

18   DaVita's Complaint also fails to meet the requirements for estoppel. Equitable estoppel

19   traditionally requires that the party to be estopped knows the facts and intends its conduct to be

20   acted on or acts in manner such that the party seeking estoppel rightfully relied on that conduct;

21   and, ignorant of the true facts, the party seeking estoppel relies on that conduct to its injury.

22   *United States v. Georgia-Pac. Co*., 421 F.2d 92, 96 (9th Cir. 1970). Additionally, the Ninth Circuit

23   has held that "to maintain a federal equitable estoppel claim in the ERISA context, the party

24   asserting estoppel must not only meet the traditional equitable estoppel requirements, but must

25   also allege: (1) extraordinary circumstances; (2) that the provisions of the plan at issue were

26   ambiguous such that reasonable persons could disagree as to their meaning or effect; and (3) that

27   the representations made about the plan were an interpretation of the plan, not an amendment or

28

**Case No. 3:18-cv-06975-JST**
**DEFENDANTS' MOTION TO DISMISS**
                                    20

modification of the plan." *Gabriel*, 773 F.3d at 957 (internal quotation marks omitted). DaVita fails to show misleading conduct by the Plan; any reliance on such conduct by a Plan member; any "extraordinary circumstances" that would warrant estoppel in the ERISA context; or any ambiguous Plan provision. And DaVita's is challenging "an amendment or modification of the plan" to which estoppel does not apply. For all of these reasons, DaVita's claim for estoppel fails.

Finally, the Ninth Circuit has "consistently held that a party cannot maintain a federal equitable estoppel claim in the ERISA context when recovery on the claim would contradict written plan provisions." *Id.* at 956. Amy's Plan Document defines the reimbursement rates available for dialysis treatment and explicitly distinguishes those rates from a "usual and customary" rate. Plan Document at 33, 119-20; *see* Complaint ¶ 49. DaVita cannot invoke estoppel to try to extract higher rates than those that the Plan provides. The Court should dismiss its claims for equitable relief based on estoppel as well as surcharge and reformation.

### C.   All of DaVita's State Law Claims Must Be Dismissed For Lack of Subject Matter Jurisdiction and Because They Are Preempted by ERISA and Insufficiently Pleaded Regardless (Count Five).

#### *(1)   DaVita's state law claims must be dismissed for lack of subject matter jurisdiction.*

Because all of DaVita's federal causes of action must be dismissed for the reasons set forth above, the Court should also dismiss the state law claims for lack of subject matter jurisdiction. *See* 28 U.S.C. 1367(c)(3). As the Ninth Circuit has explained, "[w]here state issues predominate and all federal claims are dismissed before trial, the proper exercise of discretion requires dismissal of the state claims." *Berg v. First State Ins. Co.*, 915 F.2d 460, 468 (9th Cir. 1990) (internal quotation marks omitted)); *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdiction sense, the state claims should be dismissed as well."). Moreover, here, neither efficiency nor convenience nor fairness considerations weigh against dismissal. *See Biotech. Value Fund, L.P. v. Celera Corp.*, 12 F. Supp. 3d 1194, 1207 (N.D. Cal. 2013). The Court should therefore exercise its discretion to dismiss DaVita's state claims absent any viable federal claim.

### (2)     *DaVita's state law claims are preempted by ERISA.*

ERISA contains an express preemption clause, § 514(a), which "broadly preempts 'any and all State laws insofar as they may now or hereafter relate to any [covered] employee benefit plan....'" *Fossen v. Blue Cross & Blue Shield of Mont., Inc.*, 660 F.3d 1102, 1108 (9th Cir. 2011) (quoting 29 U.S.C. § 1144(a)).  "ERISA's preemption clause, § 514(a), as set forth in 29 U.S.C. § 1144(a), is to be read expansively." *Tingey v. Pixley-Richards W., Inc.*, 953 F.2d 1124, 1130 (9th Cir. 1992). "[W]here the existence of [an ERISA] plan is a critical factor in establishing liability under a state cause of action, the state law claim is preempted. . . . ERISA's preemption provision functions even when the state action purport[s] to authorize a remedy unavailable under the federal provision." *Wise v. Verizon Commc'ns, Inc.,* 600 F.3d 1180, 1190–91 (9th Cir. 2010) (internal quotation marks omitted); *see Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1095 (9th Cir. 1985) ("The Ninth Circuit has held that ERISA preempts [multiple] common law theories," including "promissory estoppel" and "estoppel by conduct").

Every one of DaVita's state law claims—negligent misrepresentation, promissory estoppel, and quantum meruit—references or relies upon the existence of the Plan. Both negligent misrepresentation and promissory estoppel require some representation or promise to have been made by Defendants; but DaVita does not allege any particular "representation" beyond those made in the Plan Document itself. Similarly, as Defendants themselves state, quantum meruit requires circumstances indicating "that one performed at the other's request and that the requesting party promised to pay," and yet the only potential "promise to pay" at a specific rate mentioned anywhere in the Complaint is the Plan term stating that dialysis providers will be reimbursed at a "Usual and Reasonable" rate. Defendants allege that "[a]n ordinary beneficiary is likely to believe" that a Usual and Reasonable rate is equal to a UCR rate, but that allegation is utterly implausible because the Plan expressly defines those terms differently. Plan Document at 119-120. Each of DaVita's state law claims is predicated on representations made *in the Plan document itself*, and each of these claims is consequently preempted by ERISA. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (ERISA preempts state law claims that have "a connection with or reference to [an ERISA] plan").

1    Finally, the Plan specifically states that no agreement to provide reimbursement for

2 dialysis claims at a rate other than that provided for in the Plan is enforceable absent express

3 reference to the Plan. Plan Document at 33. And an agreement that failed to make such reference

4 would not be binding on the Plan, as DaVita is not entitled to relief on the basis of any

5 representation that contradicts the Plan's terms. *Gabriel*, 773 F.3d at 956. Accordingly, DaVita's

6 state law claims premised on any purported representation or promise of payment necessarily

7 reference the Plan and are therefore preempted under ERISA § 514(a).

8         *(3)    DaVita has not stated a claim for negligent misrepresentation.*

9    The elements of negligent misrepresentation under California law[11] are "(1) the

10 misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it

11 to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable

12 reliance on the misrepresentation, and (5) resulting damage." *Delino v. Platinum Cmty. Bank*, 628

13 F. Supp. 2d 1226, 1235 (S.D. Cal. 2009). As discussed *supra*, DaVita has not alleged any

14 "misrepresentation" at all. *Supra* Section IV.B.4. Its claim thus fails from the outset.

15    Furthermore, to the extent DaVita argues that it was promised higher rates than it actually

16 received (an allegation not supported by any facts in the Complaint), even this assertion would not

17 qualify as a misrepresented "past or existing material fact" supporting negligent misrepresentation.

18 Rather, any such "alleged representation concerns future conduct, that [the Plan] would cover [the

19 patient's] treatment, which cannot form the basis for a negligent misrepresentation claim." *Tenet*

20 *Healthsystem Desert, Inc. v. Fortis Ins. Co.*, 520 F. Supp. 2d 1184, 1195 (C.D. Cal. 2007); *see*

21

22         [11] Under California choice-of-law rules, "the court must analyze the respective interests of
23 the states involved ... the objective of which is to determine the law that most appropriately applies
to the issue involved." *Resolute Forest Prod., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005,
24 1014 (N.D. Cal. 2017) (internal quotation marks omitted). The "state with the predominant interest
in applying its law normally is the state in which [the underlying] conduct occurs." *Id.* at 1014.
25 Amy's Kitchen is a California Corporation head-quartered in California, Complaint ¶ 14, and "a
26 substantial part of the events giving rise to this action occurred in [the Northern District of
California]," *id.* ¶ 11. The pleadings do not specify any actions giving rise to DaVita's claims that
27 occurred outside of California. Accordingly, this Court should apply California law.

28

*Prime Healthcare Servs., Inc. v. Humana Ins. Co.*, 230 F. Supp. 3d 1194, 1207 (C.D. Cal. 2017) (representation that "Plaintiffs *would be* reimbursed for the services provided to Defendants' commercial health plan members at 100% of Plaintiffs' billed charges" not actionable as misrepresentation of existing fact (emphasis in original)).

Finally, DaVita also fails to plead justifiable reliance, furthering dooming its claim for negligent misrepresentation. The claim should accordingly be dismissed.

### *(4)    DaVita has not stated a claim for promissory estoppel.*

DaVita has similarly failed to plead a claim for promissory estoppel under California law, which requires "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1178 (2016), *review denied* (July 27, 2016).

Once again, DaVita has not alleged facts showing any "clear and unambiguous" promise made by the Plan or Amy's Kitchen. *See id.* at 1179; *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal. App. 3d 885, 890-91, 131 Cal. Rptr. 836 (Ct. App. 1976). Indeed, DaVita has not alleged any particular promise by the Plan or Amy's Kitchen at all; nor could it, given that the Complaint highlights the Plan's express definition of a "Usual and Reasonable" dialysis reimbursement rate as being distinct and different from a "usual and customary" rate. Complaint ¶ 49; *see* Plan Document at 120. Additionally, even had DaVita alleged some specific promise, the Plan could not be bound by an agreement contradicting the Plan's terms. *S. City Motors, Inc. v. Auto. Indus. Pension Tr. Fund*, No. 15-CV-01068-JST, 2015 WL 4638251, at *6 (N.D. Cal. Aug. 4, 2015) ("Plaintiffs' estoppel claim is not cognizable because they have no power to circumvent the provisions of ERISA, even if the parties agree to do so."). And, again, DaVita claims no justifiable reliance. DaVita's claim for promissory estoppel must also be dismissed.

### *(5)    DaVita has not stated a claim for quantum meruit.*

The elements of quantum meruit under California law are: "(1) that the plaintiff performed certain services for the defendant, (2) their reasonable value, (3) that they were rendered at

defendant's request, and (4) that they are unpaid." *Cedars Sinai Med. Ctr. v. Mid-W. Nat. Life Ins. Co.*, 118 F. Supp. 2d 1002, 1013 (C.D. Cal. 2000). DaVita does not allege that the Plan or Amy's Kitchen requested any service from it. *See id.* (insurer not liable in quantum meruit where insured patient requested treatment, not insurer). DaVita also fails to allege that the Plan agreed to pay DaVita any particular agreed-upon rate. *See Pac. Bay Recovery, Inc. v. Cal. Phys.' Servs., Inc.*, 12 Cal. App. 5th 200, 215 (Ct. App. 2017) (dismissing quantum meruit claim where provider "claim[ed] it was led to believe it 'would be paid a portion or percentage of its total billed charges, which charges correlated with usual, reasonable and customary charges,'" but complaint failed to "offer more detailed allegations that Blue Shield authorized a certain amount of treatment or agreed to pay a specific rate"). DaVita's quantum meruit claim must therefore be dismissed.

**D.    DaVita's Complaint Should be Dismissed with Prejudice.**

A district court properly dismisses a claim with prejudice where amendment would be futile. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990). Here, no amendment could cure this court's lack of subject matter jurisdiction over DaVita's ERISA claims and its MSPA claim brought as assignee: DaVita is bound by the terms of the assignment and the terms of the Plan, and nothing DaVita alleges can change either of those documents. *See supra*, Section IV.B.5. Similarly, no amendment could cure ERISA preemption of each of DaVita's state law claims. Finally, no amendment of the facts alleged by DaVita could possibly give rise to an actionable claim because all of DaVita's causes of action are disguised challenges to the Plan's decision to amend its benefits for dialysis treatment—an amendment it was entitled to make under ERISA. Therefore, all claims in DaVita's Complaint should be dismissed with prejudice.

**V.    CONCLUSION**

For the foregoing reasons, Defendant Amy's Kitchen respectfully requests the Complaint be dismissed with prejudice in its entirety.

DATED: January 11, 2019

By:    */s/ Floyd G. Short*
FLOYD G. SHORT *(pro hac vice)*
KATHERINE M. PEASLEE (Cal. Bar # 310298)

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Telephone: (206) 516-3880
Fax: (206) 516-3883
fshort@susmangodfrey.com
kpeaslee@susmangodfrey.com

Catriona Lavery (CA Bar #310546)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Fax: (310) 789-3150
clavery@susmangodfrey.com

*Attorneys for Defendants*

Case No. 3:18-cv-06975-JST
**DEFENDANTS' MOTION TO DISMISS**

1

## CERTIFICATE OF SERVICE

2        I certify that on January 11, 2019, I electronically filed the foregoing paper with the Clerk of

3  the Court using the Court's ECF system which will send notification of such filing to attorneys of

4  record:

5

6

7  **TRIS & MAHER LLP**
   PETER K. STRIS (SBN 216226)

8  peter.stris@strismaher.com
   BRENDAN S. MAHER (SBN 217043)

9  brendan.maher@strismaher.com

10 MICHAEL DONOFRIO (*pro hac vice* pending)
   michael.donofrio@strismaher.com

11 RACHANA A. PATHAK (SBN 218521)
   radha.pathak@strismaher.com

12 725 South Figueroa Street, Suite 1830
   Los Angeles, CA 90017

13 T: (213) 995-6800 | F: (213) 261-0299
   *Attorneys for Plaintiffs DAVITA INC. and STAR*

14 *DIALYSIS, LLC*

15

16                                             */s/ Katherine M. Peaslee*

17

18

19

20

21

22

23

24

25

26

27

28 **Case No. 3:18-cv-06975-JST**
   **DEFENDANTS' MOTION TO DISMISS**
                                        1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28