UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVITA, INC., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>AMY'S KITCHEN, INC., et al.,<br><br>    Defendants. | Case No. 18-cv-06975-JST<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: ECF Nos. 25, 40, 41 |

In this action for violations of the Employee Retirement Income Security Act ("ERISA") and Medicare as Secondary Payer Act ("MSPA"), along with related state claims, Defendants Amy's Kitchen, Inc. and Amy's Kitchen, Inc. Employee Benefit Health Plan (collectively, "Amy's") move to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 25. Plaintiffs oppose the motion. ECF No. 40. For the reasons set forth below, the motion is GRANTED in full, with prejudice as to the ERISA and MSPA claims, and without prejudice as to refiling the state claims in the appropriate state court.

I.  **BACKGROUND**

   A.  **Factual Background**

Plaintiffs DaVita, Inc. and Star Dialysis, LLC (collectively, "DaVita") are dialysis treatment providers. ECF No. 1 ("Compl.") ¶¶ 1, 12-13. Amy's Kitchen is a California corporation that makes and sells organic foods, and it is the sponsor and plan administrator of the Amy's Kitchen Employee Benefit Health Plan ("Plan" or "Amy's Plan"). *Id.* ¶¶ 14, 16. DaVita provides dialysis treatment to beneficiaries of the Plan who suffer from end-stage renal disease ("ESRD"). *Id.* ¶ 1. ESRD is another term for kidney failure, the last stage of chronic kidney disease. *Id.* ¶ 18. Dialysis substitutes many of the normal functions of the kidneys when they

have stopped working well enough for the individual to survive otherwise. *Id.* ¶ 19. Until 2017, Amy's Plan paid DaVita an "in-network" rate for dialysis treatment that was "significantly lower than the usual and customary rates DaVita charges." *Id.* ¶ 1. As of January 1, 2017, Amy's Plan eliminated network coverage and "dramatically reduced reimbursement" for dialysis. *Id.* ¶ 2.

According to DaVita, this elimination of coverage violates the MSPA, which allocates payment responsibility between Medicare and private payers. Compl. ¶¶ 2-4. Before the MSPA was passed by Congress, private insurers had an incentive to push ESRD sufferers onto Medicare because individuals with ESRD are entitled to Medicare regardless of age or financial status. *Id.* ¶ 3. The MSPA reversed this coverage shifting by making "private insurers . . . the 'primary' payers and Medicare the 'secondary' payer" during an individual's first 30 months of ESRD-based Medicare eligibility. *Id.* (quoting *Bio-Med. Applications of Tenn., Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 278 (6th Cir. 2011)). DaVita claims that Amy's Plan violates this "foundational principle" by eliminating in-network coverage of dialysis, which creates incentives for patients with ESRD to drop out of Amy's Plan and rely on Medicare, where their payment obligations would be significantly lower. *Id.* ¶¶ 4, 6.

The rate DaVita is paid for dialysis treatment depends on whether the patient's insurance is government-sponsored or private, and whether DaVita is in-network or out-of-network. *See* Compl. ¶¶ 25-27. For government-sponsored plans like Medicare, the government unilaterally sets the reimbursement rate, which is usually significantly lower than rates paid by private plans. *Id.* ¶ 26. For private insurance plans, the rates depend on whether DaVita is in-network or out-of-network with the plan. *Id.* ¶ 27. When DaVita is "in-network," DaVita is paid a contractually negotiated rate. *Id.* When DaVita is "out-of-network," it is generally paid according to an industry standard rate known as the "usual, customary, and reasonable" ("UCR") rate. *Id.* DaVita's out-of-network payment rates are on average higher than its in-network rates. *Id.*

Amy's Plan is a preferred provider organization ("PPO") health plan, meaning it incentivizes participants to select healthcare providers that have contracted with the plan for discounted rates. Compl. ¶ 29. In-network coverage generally protects beneficiaries from having to pay any charged amounts not paid for by the plan, a practice known as "balance billing." *Id.* ¶

2

1  30.  Until December 31, 2016, Amy's Plan beneficiaries had access to DaVita as an in-network provider.  *Id.* ¶ 36.  Amy's Plan also covers out-of-network providers who have not contracted with the Plan.  *Id.* ¶ 31.  The Plan pays non-network providers a percentage of what the Plan considers to be the UCR rate for the provided services, leaving the beneficiary to pay higher copayments, along with balance billing.  *Id.*

Amy's Plan also relies on third-party claims administrators such as Anthem Blue Cross and regional Blue Cross Blue Shield entities.  Compl. ¶ 32.  These entities determine whether to process claims for benefits on a network or non-network basis.  *Id.*  Apart from any specific plan, Blue Cross entities have their own networks of contracted and preferred healthcare providers, establishing in-network reimbursement rates for the providers' services.  *Id.* ¶ 33.  Plans then contract with the Blue Cross entities and gain access to these provider networks for their beneficiaries.  *Id.*  DaVita has contracted with one of these entities, Blue Cross of Oregon, to provide discounted dialysis treatment.  *Id.*

DaVita's claims here stem from claims for treatment rendered by DaVita to Patient 1, an Amy's Plan beneficiary, which were processed by Blue Cross of Oregon on an in-network basis.  *See* Compl. ¶ 34.  Up through December 2016, DaVita received the rates it had negotiated with Blue Cross of Oregon, which are substantially lower than the usual and customary rates DaVita charges for its services.  *Id.*  On January 1, 2017, Amy's Plan "effectively eliminated network coverage for dialysis treatment."  *Id.* ¶ 40.  On that date, the Plan was amended to include a "Dialysis Benefit Preservation Program," which carves dialysis treatment out of the Plan's in-network/out-of-network approach described above.  *Id.* ¶ 41.  Instead, dialysis-related claims are subject to "mandated cost review," with dialysis providers no longer treated as in-network.  *Id.*

Neither party disputes that the Plan amendments were designed to save costs on dialysis treatment.  *See* Compl. ¶ 39 ("This case arises from the Plan's efforts to save money on dialysis treatment."); ECF No. 25 at 12-13.  According to Amy's, due to the highly concentrated market for dialysis providers, providers like DaVita are able to "discriminatorily charge plans . . . much higher rates for dialysis than they charge government and commercial payers in order to subsidize those larger payers."  ECF No. 25 at 13.  In response, Amy's Plan adopted the Dialysis Benefit

Preservation Program as a "cost-control measure" to effectuate its "fiduciary obligation to preserve Plan assets." *Id.* DaVita alleges these actions violated provisions of ERISA and the MSPA, and also asserts related state law claims. *See* Compl.

### B. Procedural History

DaVita brings suit against Amy's alleging five causes of action. *See generally* Compl.

First, DaVita alleges that Amy's Plan violates two MSPA provisions: one that prohibits an insurer from "tak[ing] into account that an individual is entitled to or eligible for" Medicare based on ESRD; *see* Compl. ¶¶ 64-65 (quoting 42 U.S.C. § 1395y(b)(1)(C)(i)); and a second that prohibits an insurer from "differentiat[ing] in the benefits it provides between individuals having end stage renal disease and other individuals covered by such plan on the basis of . . . the need for renal dialysis, or in any other manner," *id.* ¶ 66 (quoting 42 U.S.C. § 1395y(b)(1)(C)(ii)). DaVita claims these violations entitle it to double damages under the MSPA's enforcement provision, 42 U.S.C. 1395y(b)(3)(A), both in its own right and as Patient 1's assignee. *Id.* ¶¶ 69, 73.

Second, DaVita, as Patient 1's assignee, seeks injunctive and other equitable relief under 29 U.S.C. § 1132(a)(3) of ERISA to address allegedly illegal plan terms, including reformation to conform the plan to the requirements of federal law, as well as attorneys' fees. *Id.* ¶ 78.

Third, DaVita seeks relief under 29 U.S.C. § 1132(a)(1)(B), an ERISA provision allowing recovery of benefits due under the Plan, and attorneys' fees under 29 U.S.C. § 1132(g). *Id.* ¶ 83.

Fourth, DaVita alleges that Amy's Plan failed to adequately disclose material terms of the Plan, breaching its fiduciary duty under ERISA. *Id.* ¶ 85. Specifically, DaVita claims that the Plan "failed to (1) adequately disclose to beneficiaries that there would be no in-network treatment for dialysis, and (2) that payment rates for dialysis would be significantly lower than for all other care." *Id.* ¶ 87. DaVita argues that ERISA entitles misled beneficiaries to recover under theories of surcharge, reformation, and estoppel. *Id.* ¶ 89.

Fifth, DaVita brings claims for negligent misrepresentation, promissory estoppel, and quantum meruit under state law, in its own right as a healthcare provider. *Id.* ¶¶ 94, 98.

Amy's now moves to dismiss DaVita's complaint. ECF No. 25. Amy's argues that: (1) DaVita lacks statutory standing to bring ERISA claims on its own behalf (Counts 2, 3, and 4);

4

(2) DaVita lacks Article III standing to bring ERISA claims on behalf of Patient 1 (Counts 2, 3, and 4); (3) DaVita lacks Article III standing to bring its MSPA claim as an assignee of Patient 1 (Count 1); (4) DaVita has not alleged any actual expenses paid by Medicare, as required to state a claim under the MSPA (Count 1); (5) DaVita has not alleged discrimination between plan members as required to state a claim under the MSPA, or for "illegal plan terms" under ERISA (Counts 1 and 2); (6) DaVita fails to state a claim for denial of benefits under ERISA (Count 3); (7) DaVita fails to state a claim for breach of fiduciary duty under ERISA because the Plan adequately disclosed plan changes to beneficiaries (Count 4); (8) DaVita has failed to state a claim for equitable relief (surcharge, reformation, or estoppel) under ERISA (Counts 2 and 4); and (9) DaVita's state claims should be dismissed because the Court lacks subject matter jurisdiction over them, they are preempted by ERISA, and they are inadequately pleaded (Count 5).

## II.  LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(1)

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).  A defendant may raise the defense of lack of subject matter jurisdiction by motion pursuant to Federal Rule of Civil Procedure 12(b)(1).  The party asserting jurisdiction always bears the burden of establishing subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### B.  Federal Rule of Civil Procedure 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or

sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted). The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

### III. DISCUSSION

#### A. Statutory Standing to Bring ERISA Claims as a Healthcare Provider

Amy's first argues DaVita lacks "statutory standing" to sue in its own right under ERISA. ECF No. 25 at 16. Whether a plaintiff is authorized to sue under ERISA's civil enforcement provisions is not a jurisdictional issue. *See DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 873 (9th Cir. 2017) ("The question whether Congress has granted a private right of action to a particular plaintiff is *not* a jurisdictional requirement. '[A] dismissal for lack of statutory standing [under ERISA] is properly viewed as a dismissal for failure to state a claim rather than a dismissal for lack of subject matter jurisdiction.'") (emphasis in original) (quoting *Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009)).

While not a question of standing per se, the Court agrees that DaVita cannot bring suit on its own behalf under ERISA, and DaVita does not argue otherwise. *See* ECF No. 40 at 9. ERISA empowers only plan participants, beneficiaries, fiduciaries, and the Secretary of Labor to bring civil actions. 29 U.S.C. § 1132(a). Healthcare providers are not beneficiaries within the meaning of ERISA's enforcement provisions. *DB Healthcare*, 852 F.3d at 874 (citing *Spinedex Physical Therapy USA, Inc. v. United Healthcare of Ariz.*, 770 F.3d 1282, 1289 (9th Cir. 2014)). As "a non-participant health care provider," DaVita may bring suit under ERISA only "derivatively, relying on its patients' assignments of their benefits claims." *Spinedex*, 770 F.3d at 1289.

The complaint itself is ambiguous as to whether DaVita asserts ERISA claims on its own behalf or solely as Patient 1's assignee. *See* Compl. at 18-21. To the extent that DaVita is asserting ERISA claims on its own behalf, those claims are hereby DISMISSED with prejudice.

#### B. Article III Standing to Bring ERISA and MSPA Claims as an Assignee

The Court now turns to the question of whether DaVita has Article III standing, a jurisdictional prerequisite to a federal court's consideration of any claim, to bring its ERISA and

6

MSPA claims as Patient 1's assignee. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). To show it has Article III standing, DaVita must establish three elements: (1) that it suffered an "injury in fact," that is (a) concrete and particularized, and (b) actual or imminent; (2) that there is a causal connection between the injury and conduct complained of; and (3) that it is likely that the injury will be redressed by a favorable decision. *Id.* Amy's argues that DaVita lacks Article III standing to pursue Counts 2 and 4 because Patient 1 did not assign DaVita his or her claims for equitable relief under ERISA; to pursue Count 3 because Patient 1 did not suffer any injury in fact establishing standing to bring an ERISA benefits claim; and to pursue Count 1 because, again, Patient 1 suffered no injury in fact sufficient to support an MSPA claim. ECF No. 25 at 16-20.

### 1. ERISA Claims for Equitable Relief (Counts Two and Four)

Under the civil enforcement provisions of ERISA, a valid assignment confers standing on the assignee to sue in the place of the assignor. *Misic v. Bldg. Serv. Emps. Health & Welfare Tr.*, 789 F.2d 1374, 1377-79 (9th Cir. 1986). "So a health care provider in appropriate circumstances can assert the claims of an ERISA participant or beneficiary." *DB Healthcare*, 852 F.3d at 876 (emphasis omitted). Amy's asserts that DaVita lacks derivative standing to sue for illegal plan terms (Count 2) or breach of fiduciary duty (Count 4) under 29 U.S.C. § 1132(a)(3) of ERISA because the assignment form executed by Patient 1 assigns only claims for payment of benefits. ECF No. 25 at 16-17.

To determine whether the patient assignment form assigned DaVita the right to pursue ERISA claims for equitable relief, "we look at the language and context of the authorizations."[1]

---

[1] Although ordinarily the consideration of extrinsic evidence converts a Rule 12(b)(6) motion to a summary judgment motion, *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), documents which are not physically attached to the complaint may be considered if their "authenticity . . . is not contested" and "the plaintiff's complaint necessarily relies" on them. *Id.* (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998)). Amy's argues DaVita's complaint "necessarily relies upon" the assignment form. ECF No. 25 at 17 n.3 (citing Compl. ¶ 56(d)). Because DaVita claims that Patient 1's "[a]ssignment gives DaVita the right to be paid directly for any services rendered to Patient 1, and it also entitles DaVita to assert Patient 1's legal rights under ERISA and other applicable law," Compl. ¶ 56(d), the Court agrees that DaVita's complaint "necessarily relies on" the assignment form. No party disputes the assignment's

7

*DB Healthcare*, 852 F.3d at 877. "The question of what rights and remedies pass with a given assignment depends upon the intent of the parties." *Id.* at 876 (quoting *Pac. Coast Agric. Exp. Ass'n v. Sunkist Growers, Inc.*, 526 F.2d 1196, 1208 (9th Cir. 1975)). "We therefore consider whether the claims [DaVita] advances in this litigation are within the scope of the assignment[] on which it relies." *Id.* (citing *Spinedex*, 770 F.3d at 1292).

In *Spinedex*, the relevant assignment forms provided, in part, "[t]his is a direct assignment of my rights and benefits under this policy." 770 F.3d at 1292. Despite the broad language used, the court held that "the entirety of the Assignment indicates that patients intended to assign to [the provider] only their rights to bring suit for payment of benefits," meaning the provider had "no right to bring claims for breach of fiduciary duty." *Id.* Similarly, in *DB Healthcare*, where "[t]he assignment language refer[red] only to direct payment of insurance benefits to the physician, with no reference to any broader rights," the court found that the language and context "indicates the plan subscribers intended to assign, at most, the right to payment of benefits and the associated right to sue for non-payment." 852 F.3d at 877. There, the court had "no doubt" that such authorization did not "encompass the [plaintiff's] claims for declaratory and injunctive relief . . . or for breach of fiduciary duty." *Id.*

Here, the assignment document is titled "Patient Acknowledgement, Authorization and Financial Responsibility Form." ECF No. 25-3 at 1. The form states that the "purpose of this document" is for the patient to "confirm [his or her] choice to receive dialysis services at the listed facility" and to acknowledge that the patient "will be personally responsible for payments and other services [he or she] receive[s] through DaVita." *Id.* Further, the patient assigns "rights to payments from [his or her] insurer and authoriz[es] DaVita to obtain the necessary information to obtain such payments." *Id.* Amy's argues that "the entirety of the form is directed at the pursuit of unpaid benefits," and points out that the form includes no specific assignment of the right to pursue a claim for breach of fiduciary duty, nor claims for equitable relief. ECF No. 25 at 17.

---

authenticity. Therefore, the Court will consider the assignment form, ECF No. 25-3, in ruling on Amy's 12(b)(6) motion to dismiss.

DaVita responds that the assignment here expressly refers to "'any cause of action' in addition to 'any payment,'" language which distinguishes the assignment from language cited by Amy's. ECF No. 40 at 11 (citing ECF No. 25-3 at 3). The provision DaVita references is the fifth item of the authorization form, titled "Assignment of Benefits: Lien," and states in pertinent part: "I hereby assign to DaVita all of my right, title and interest in *any cause of action* and/or any payment due to me . . . under any employee benefit plan . . . under which I am a participant or beneficiary, for services, drugs or supplies provided by DaVita to me for purposes of creating an assignment of benefits under ERISA." ECF No. 25-3 at 3 (emphasis added).

DaVita argues that the addition of "any cause of action" to "any payment" creates an assignment that goes beyond the right to claim payment of benefits. ECF No. 40 at 11. In *Spinedex*, because the assignment stated, "[t]his is a direct assignment of my rights and benefits under this policy," the court limited its interpretation of "rights" to mean the right to receive payment. *Id.* (citing 770 F.3d at 1292). Because the assignment here, in contrast, includes "any cause of action . . . under any employee benefit plan," where breach of fiduciary duty is "among the causes of action available to the participant under the Plan," DaVita argues that its assignment of rights includes such a claim. *Id.*

The parties do not cite, and the Court has not found, any case decided by the Ninth Circuit or a district court within the circuit deciding the effect of an assignment of right in "any cause of action" under an employee benefit plan. Amy's, for its part, does not specifically address the "any cause of action" language in its reply, and instead continues to argue that the "broad, generic language in DaVita's form, which is expressly directed at assignment of recovery for benefits, does not suffice to assign other rights or causes of action under ERISA." ECF No. 41 at 9. Amy's maintains that the broader context of the form should inform the Court's interpretation of the scope of the assignment, as in *Spinedex*. *Id.* at 8 (quoting 770 F.3d at 1289). Finally, Amy's suggests that only an express assignment of the right to sue under ERISA's civil enforcement provisions would suffice. ECF No. 25 at 18 ("[O]nly an express and knowing assignment of an ERISA fiduciary breach claim [under § 1132(a)(2)] is valid." (quoting *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 896 (C.D. Cal. 2012))). Amy's neglects to

mention, however, that the *Wellpoint* court is quoting a Fifth Circuit opinion in order to describe *that court's* approach to the question, rather than its own. *See WellPoint*, 903 F. Supp. 2d at 896-97 ("Moreover, at least one Circuit taking up the issue has concluded that "only an express and knowing assignment of an ERISA fiduciary breach claim [under § 1332(a)(2) ] is valid." (quoting *Texas Life, Accident Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co.,* 105 F.3d 210, 218 (5th Cir.1997)).[2]

*DB Healthcare* is informative, but not entirely on point. There, the court found the assignment, which read, "I Hereby Authorize My Insurance Benefits to Be Paid Directly to the Physician," to be limited to the right to payment of benefits and associated right to sue for non-payment, based on the facts that (1) the authorization was located on a form listing types of medical services, and (2) the assignment language referred only to direct payment of insurance benefits to the physician, "with no reference to any broader rights." 852 F.3d at 876-77. Here, by contrast, the assignment contains "any cause of action" language that supports a finding of broader assignee rights.

However, in *Care First Surgical Ctr. v. ILWU-PMA Welfare Plan*, No. CV 14-01480 MMM (AGRx), 2014 WL 12573014 (C.D. Cal. Dec. 26, 2014), another case cited by DaVita, the assignment language was much more specific. There, the assignment stated that the assignors "intend[ed] for [their] personal standing under ERISA's disclosure and civil enforcement procedures under 29 U.S.C. §§ 1024 and 1132 to be . . . transferred" to the provider. *Id.* at *7. The court found this language "sufficiently explicit" to confer standing on the healthcare provider plaintiff to sue not only for recovery of benefits, "but also to seek penalties for non-disclosure and to assert that the plan administrator has breached its fiduciary duty." *Id.* at *8.

This case is more like *Spinedex* than it is like *Care First*. Although the "any cause of

---

[2] At the hearing on the motion, Amy's counsel stated that the Fifth Circuit language had instead been adopted by *Care First Surgical Ctr. v. ILWU-PMA Welfare Plan*, No. CV1401480MMMAGRX, 2014 WL 12573014, at *6 (C.D. Cal. Dec. 26, 2014). What actually happened in that case, however, is that the district court relied without context on *Wellpoint*'s use of that language, ignoring that court's reason for using it. *Id.* Nonetheless, putting the mis-citation to one side, the *Care First* court did hold that only an express and knowing assignment of an ERISA fiduciary breach claim under § 1132(a)(2) is valid. *Id.*

action" language at issue here differs from the "my rights and benefits" language found insufficient to confer assignment for claims other than for payment of benefits in *Spinedex*, the broader focus and context of the form informs the Court's interpretation of the scope of the assignment. 770 F.3d at 1289; 852 F.3d at 877. That court found Spinedex's argument that the assignment encompassed ERISA claims for breach of fiduciary duty to be "divorced from context," as "[t]he entire focus of the [a]ssignment is payment for medical services provided by Spinedex." 770 F.3d at 1292. Similarly here, the focus of the form is the patient's responsibility for payment of treatment provided by DaVita. ECF No. 25-3 at 2 ("The purpose of this document is to confirm . . . that I will be personally responsible for payments and other services I receive through DaVita."). As in *Spinedex*, "the [a]ssignment nowhere indicates that, by executing the assignment, patients were assigning to [DaVita] rights to bring claims for breach of fiduciary duty." 770 F.3d at 1292 (citing *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 746 (9th Cir. 1993) ("[I]t is essential to an assignment of a right that the [assignor] manifest an intention to transfer the right to another person.")). The language here is also much less specific than the assignment in *Care First*. Moreover, the provision that contains the "any cause of action" language is titled "Assignment of *Benefits*." ECF No. 25-3 at 3 (emphasis added). This suggests that, at most, Patient 1 transferred to DaVita the right to bring suit for payment of benefits, rather than for "any cause of action" whatsoever.

In light of the broader context of the patient form, which focuses on the responsibility of the patient to pay for treatment, the reference to "any cause of action" found solely in a provision titled "Assignment of Benefits," and the relatively generic language employed by the assignment compared to what courts in the Ninth Circuit have found sufficient to confirm an explicit assignment of a right to bring ERISA claims beyond benefits, the Court finds the scope of the assignment here to be limited to the right to claims for payment of benefits.

Absent a valid assignment to bring ERISA claims that are not for payment of benefits, DaVita lacks standing to assert Patient 1's claims for illegal plan terms and breach of fiduciary duty under 29 U.S.C. § 1132(a)(3). Because this defect in DaVita's complaint cannot be cured, Counts 2 and 4 are DISMISSED with prejudice.

11

### 2. ERISA Claim for Benefits (Count Three)

Amy's argues that DaVita lacks Article III standing to bring its claim for benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), because Patient 1, who assigned his claim for benefits to DaVita, did not suffer an injury-in-fact. ECF No. 25 at 18. In particular, because Patient 1 continued to receive dialysis treatment after January 1, 2017, and DaVita continued to receive payments under the amended Amy's Plan – albeit not at the level of payment DaVita sought under the previous Plan terms – DaVita has not pleaded any "actual injury." *Id.* DaVita responds that Patient 1 suffered an economic injury because Amy's Plan entitled him to better coverage and higher reimbursement than he actually received. ECF No. 40 at 12.

The language of Amy's Plan directly contradicts DaVita's argument that Patient 1 was entitled to better coverage and higher reimbursement than he received.[3] DaVita appears to recognize this when it states that "Amy's Plan *still purports to offer* patients access to dialysis treatment from 'preferred providers' who will not balance bill them, *and it purports to reimburse* dialysis treatment for out-of-network providers at a non-Medicare based rate." *Id.* (citing ECF No. 25-2 at 17, 36, 118) (emphasis added). In fact, Amy's Plan provides for dialysis treatment charges reimbursed at a "Usual and Reasonable" rate, which is defined by the Plan. *See* ECF No. 25-2 at 37, 124. Patient 1 received dialysis treatment from DaVita, Compl. ¶ 56, and Amy's Plan paid DaVita at the rate defined by the then-operative Plan terms. *See id.* ¶ 56(g).

DaVita maintains that "[p]ayment of less than the full billed rate is an 'adverse benefit determination' under ERISA." *Id.* ¶ 57 (citing 29 C.F.R. § 2560.503-1(m)(4)) (defining "adverse benefit determination" as including "[a] denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part)" for a claimed benefit); *see also* ECF No. 40 at 12. But the plain language of the regulation again belies this claim, because here, there was no properly "claimed benefit" that was denied, reduced, terminated, or failed to have been provided or made payment for. Under the terms of the Plan, the claimed benefit was dialysis treatment at a "Usual

---

[3] As with Patient 1's assignment, *see supra* note 1, the Court concludes that it may consider the Plan document, ECF No. 25-2, in ruling on this 12(b)(6) motion because its "authenticity . . . is not contested" by any party and "the plaintiff's complaint necessarily relies" on it. *See Lee*, 250 F.3d at 688; Compl. ¶ 15.

and Reasonable" rate, ECF No. 25-2 at 37, the rate at which DaVita was reimbursed. *See* Compl. ¶¶ 48-50. Because the payment made to DaVita matched what was described in Amy's Plan, DaVita cannot claim it received an adverse benefit determination within the meaning of ERISA.

Because Patient 1 has not suffered an injury-in-fact, DaVita lacks the requisite Article III standing to bring an ERISA claim for benefits under 29 U.S.C. § 1132(a)(1)(B). Count 3 is therefore DISMISSED with prejudice.

### 3.     MSPA Claim for Equitable Relief (Count One)

DaVita brings its MSPA claim both on its own behalf and as Patient 1's assignee. Compl. ¶ 73. Amy's does not challenge DaVita's standing to bring an MSPA claim in its own right. *See* ECF No. 25 at 16; ECF No. 40 at 12 n.6. Nor does Amy's directly argue that the scope of DaVita's assignment fails to encompass an MSPA claim, though Amy's does argue that the assignment was limited to an ERISA claim for benefits. *See* ECF No. 41 at 8-9. Instead, Amy's focuses its argument that DaVita lacks standing to bring suit under the MSPA as an assignee on the fact that the complaint does not allege any payment obligations actually incurred by Patient 1 that would satisfy the injury-in-fact requirement of Article III. ECF No. 40 at 19.

The Court does not reach this argument, because it determines that DaVita lacks standing to bring Patient 1's MSPA claim in the absence of any valid assignment of Patient 1's right to bring an MSPA cause of action. *See Spinedex*, 770 F.3d at 1292. The fact that the scope of Patient 1's assignment to DaVita is limited to bringing a claim for payment of benefits necessarily precludes any asserted assignment of his MSPA rights. *See supra* Section III.A.1. The assignment form nowhere mentions or includes the right to bring an MSPA cause of action. Accordingly, DaVita lacks standing to bring an MSPA claim as Patient 1's assignee.

Count 1 is DISMISSED with prejudice as to DaVita's claim on behalf of Patient 1. The Court concludes that DaVita does have standing to pursue Count 1 on its own behalf.

### C.     MSPA Claim on the Merits (Count One)

The Court finds that the remainder of Count 1[4] – DaVita's MSPA claim on its own behalf

---

[4] The Court is required to talk about the counts of the complaint as having separate parts because DaVita lumps together its claims on its own behalf and those on behalf of Patient 1 together in the

13

– must also be dismissed because DaVita has failed to adequately plead an MSPA claim.

DaVita alleges that Amy's Plan violates two provisions of the MSPA: (1) the provision prohibiting an insurer from "tak[ing] into account that an individual is entitled to or eligible for" Medicare based on ESRD, 42 U.S.C. § 1395y(b)(1)(C)(i); and (2) the provision that prohibits an insurer from "differentiat[ing] in the benefits it provides between individuals having end stage renal disease and other individuals covered by such plan on the basis of . . . the need for renal dialysis, or in any other manner," 42 U.S.C. § 1395y(b)(1)(C)(ii). Compl. ¶¶ 64-66. DaVita argues that by covering "numerous expensive treatments besides dialysis," while applying cost-saving measures to dialysis treatment, which Medicare routinely covers, Amy's "impermissibly took into account . . . ESRD patients' Medicare eligibility." ECF No. 40 at 16 (citing *Bio-Med. Applications*, 656 F.3d at 282).

Amy's argues that the Plan does not violate these provisions because the Dialysis Benefit Preservation Program treats ESRD patients, who are entitled to enroll in Medicare, the same as non-Medicare-eligible dialysis patients. ECF No. 25 at 22. Rather, the Plan differentiates on the basis of the medical service provided – dialysis – not the fact of any plan member's ESRD diagnosis or Medicare-eligibility. *Id.*

Though there appears to be no authority on this question in the Ninth Circuit, *National Renal Alliance, LLC v. Blue Cross and Blue Shield of Georgia, Inc.* held that defendant Blue Cross's decision to lower reimbursement rates for dialysis treatment received at out-of-network facilities did not violate the MSPA "because [defendant's actions] provide the same level of reimbursement for out-of-network dialysis treatment regardless of the insured's reason for receiving the treatment." 598 F. Supp. 2d 1344, 1354 (N.D. Ga. 2009). In contrast, in *Bio-Medical Applications*, the Sixth Circuit affirmed the lower court's finding that defendant Central States violated the MSPA when it terminated a patient's coverage specifically because she became eligible for Medicare. 656 F.3d at 283-84. There, the plan specifically stated: "Coverage under this Plan shall terminate on the earliest of the following dates: . . . (b) the date [the insured] first

---

same count.

14

becomes entitled to Medicare benefits . . . ." *Id.* at 280. When Central States discovered the patient had become eligible for Medicare, it immediately terminated her coverage, in spite of the "may-not-take-into-account-Medicare-benefits" language of the MSPA. *Id.* In contrast to the facts in *Bio-Medical Applications*, the Amy's Plan makes no mention of Medicare eligibility as a basis for coverage.

The regulations implementing the take-into-account provision of the MSPA also provide guidance. DaVita contends that even if Amy's Plan does not facially discriminate against ESRD-based-Medicare-eligible individuals, it violates regulations regarding Medicare secondary payer rules which provide that "[p]lan provisions that have *the effect* of denying, restricting, or terminating benefits for [ESRD-based Medicare eligible] individuals" violate the take-into-account rule as well. ECF No. 40 at 17 (citing 60 Fed. Reg. 45344-01, at *45351 (Aug. 31, 1995)) (emphasis added by DaVita). However, DaVita omits the portion of the regulation clarifying that this prohibition applies only when plan provisions have such an effect for individuals with ESRD, "but not for similarly situated individuals." 60 Fed. Reg. 45344-01, at *45351 (Aug. 31, 1995).

Thus, even if the dialysis treatment provisions of Amy's Plan had the "effect" of denying benefits to ESRD-based-Medicare-eligible individuals, DaVita would need to plead the second part of the regulation: that the Dialysis Benefit Preservation Program did not have this effect for similarly situated individuals. The express terms of the Plan preclude any such claim. A "similarly situated individual" here would be someone receiving dialysis treatment who is not Medicare-eligible. Such a patient would be subject to the same provisions as ESRD sufferers under Amy's Plan. *See* ECF No. 25-2 at 36 ("The Dialysis Program shall be the exclusive means for determining the amount of Plan benefits to be provided to covered persons and for managing cases and claims involving dialysis services and supplies, *regardless of the condition causing the need for dialysis*.") (emphasis added).

DaVita also fails to plead a claim under the differentiation provision of the MSPA. Under 29 U.S.C. § 1395y(b)(1)(C), a group health plan:

> (ii) may not differentiate in the benefits it provides between individuals having end stage renal disease and other individuals covered by such plan on the basis of the existence of end stage renal

disease, the need for renal dialysis, or in any other manner.

The court in *National Renal Alliance* faced a similar question and found that an insurer's decision to lower reimbursement rates for dialysis treatment received at out-of-network facilities did not constitute "'differentiating' [between the] level of coverage provided to those suffering ESRD and those not." 598 F. Supp. 2d at 1354. Significant to this finding was "the fact that there is no allegation that Blue Cross pays a different amount for dialysis treatment of non-ESRD patients than ESRD patients." *Id.* Similarly, the applicable rates in Amy's Plan are set based on the fact of dialysis treatment, not the existence of ESRD. Although in *National Renal Alliance* the reimbursement change affected out-of-network facilities only, while here, both in- and out-of-network providers are affected, the fact remains that the Plan does not pay "a different amount for dialysis treatment of non-ESRD patients [and] ESRD patients." *Id.*

Accordingly, Count 1 is DISMISSED in full because DaVita has failed to adequately plead an MSPA claim. Because DaVita's claim is barred by the express terms of the Plan, the Court concludes that leave to amend would be futile. DaVita's MSPA claim is dismissed with prejudice.

### D. Remaining Claims

Because the Court has dismissed all of DaVita's MSPA and ERISA claims with prejudice for the reasons outlined above, the Court will not address Amy's remaining arguments – namely, that DaVita has failed to state a claim under the MSPA for failure to allege any actual expenses paid by Medicare, or that DaVita has failed to state claims for illegal plan terms, denial of benefits, breach of fiduciary duty, or equitable relief under ERISA.

Similarly, the Court will not reach Amy's arguments that DaVita's state claims should be dismissed due to ERISA preemption and failure to state a claim because the Court declines to exercise supplemental jurisdiction over those claims. A district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Where a district court dismisses a federal claim, leaving only state claims for resolution, it should decline jurisdiction over the state claims and dismiss them without prejudice." *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1101 (9th Cir. 1996).

16

**CONCLUSION**

Amy's motion to dismiss is GRANTED. The motion is granted with prejudice as to DaVita's MSPA and ERISA claims because leave to amend would be futile. The motion is granted without prejudice as to the state law claims.

**IT IS SO ORDERED.**

Dated: April 5, 2019



JON S. TIGAR
United States District Judge

17